# 25-1065-cv(L)
## 25-1195-cv(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

————— ➤➤ ◄◄ —————

RAPAPORT USA, INC.,

*Plaintiff-Appellant,*

*v.*

NIVODA USA LLC,

*Defendant-Appellee,*

NIVODA LIMITED, DAVID SUTTON,

*Defendants.*

————————

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

Jordan Greenberger
FIRESTONE GREENBERGER PLLC
*Attorneys for Plaintiff-Appellant*
104 West 40th Street, 4th Floor
New York, New York 10018
212-597-2255



## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, the undersigned counsel for Appellant,

Rapaport USA, Inc. ("Rapaport"), a private non-governmental party, certifies that

Rapaport does not have a parent corporation, nor is there any publicly held

corporation that owns 10% or more of Rapaport's stock.

## TABLE OF CONTENTS

**Page**

RULE 26.1 DISCLOSURE STATEMENT..................................................i

TABLE OF AUTHORITIES ..............................................................iv

I.  PRELIMINARY STATEMENT ....................................................1

II.  JURISDICTIONAL STATEMENT ................................................3

III.  ISSUES PRESENTED FOR REVIEW ...........................................4

IV.  STATEMENT OF THE CASE .....................................................5

    A.  Local Rule 28.1 Statement ................................................5

    B.  Rapaport's Copyright Infringement Claim Against Nivoda ...........................................................................6

        1.  Summary Of Rapaport's Claim...................................6

        2.  The Price List ........................................................7

        3.  Nivoda's Willful Copyright Infringement....................10

V.  SUMMARY OF RAPAPORT'S ARGUMENTS.........................13

VI.  STANDARD OF REVIEW .......................................................16

VII.  ARGUMENT .......................................................................16

    A.  The Merger Doctrine Does Not Apply To The Price List............................................................................16

        1.  The Merger Doctrine, Generally .............................17

        2.  The Merger Doctrine Does Not Apply To Soft Ideas Involving Matters Of Taste And Personal Opinion ...............................................................19

3. The Merger Doctrine Did Not Apply In *CCC*,
A Second Circuit Case Involving A Publisher's
Opinion Of Used Car Prices ..........................................21

4. The Merger Doctrine Did Not Apply In *CDN*,
A Ninth Circuit Case Involving A Publisher's
Opinion Of Collector Coin Prices ................................24

5. The Merger Doctrine Similarly Should Not Apply
In This Case, Involving Rapaport's Opinion Of
Diamond Prices ...........................................................26

B. The Cases Relied Upon By The District Court Are
Distinguishable ...................................................................28

C. At A Minimum, The District Court Should Not Have
Applied The Merger Doctrine Until After Discovery .......................33

D. The Complaint Otherwise Stated A Claim ...............................35

1. Rapaport Sufficiently Pleaded Pre-Action Copyright
Registrations For The Price List ...................................35

2. The Complaint Stated A Prima Facie Case Of
Copyright Infringement ..............................................37

3. Fair Use Is Not A Viable Defense ................................42

E. If There Were Issues With The Complaint, Rapaport
Should Have Been Granted Leave To Amend ...................47

VIII. CONCLUSION ...............................................................47

CERTIFICATE OF COMPLIANCE ...............................................49

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdin v. CBS Broad. Inc.*,
　971 F.3d 57 (2d Cir. 2020) ...............................................................37

*Allen v. Grist Mill Cap. LLC*,
　88 F.4th 383 (2d Cir. 2023) ...............................................................4

*Am. Geophysical Union v. Texaco Inc*.,
　802 F. Supp. 1 (S.D.N.Y. 1992), Amended (Oct. 26, 1992),
　*aff'd*, 37 F.3d 881 (2d Cir. 1994), order amended and superseded,
　60 F.3d 913 (2d Cir. 1994), and *aff'd*, 60 F.3d 913 (2d Cir. 1994) ...................41

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
　598 U.S. 508 (2023)................................................................43, 44

*Arista Recs., LLC v. Doe 3*,
　604 F.3d 110 (2d Cir. 2010) ...............................................................37

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)................................................................34

*Authors Guild v. Google, Inc.*,
　804 F.3d 202 (2d Cir. 2015) ...............................................................44

*BanxCorp v. Costco Wholesale Corp.*,
　723 F. Supp. 2d 596 (S.D.N.Y. 2010) ..........................15, 28, 31, 33, 34

*BanxCorp v. Costco Wholesale Corp.*,
　978 F. Supp. 2d 280 (S.D.N.Y. 2013) ..........................15, 28, 31, 32, 33

*Brown v. Netflix, Inc.*,
　855 F. App'x 61 (2d Cir. May 18, 2021)........................................43

*Campbell v. Acuff-Rose Music, Inc.*,
　510 U.S. 569 (1994)................................................42, 44, 45, 47

*Capitol Recs., LLC v. ReDigi Inc.*,
　910 F.3d 649 (2d Cir. 2018) ...............................................................45, 46

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ...............................................................40

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports*,
  44 F.3d 61 (2d Cir. 1994) ...........................................................*passim*

*CDN Inc. v. Kapes*,
  197 F.3d 1256 (9th Cir. 1999) ...................................................*passim*

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ...............................................................16

*Cobb v. Am. Urb. Radio Networks LLC*,
  2025 WL 641437 (S.D.N.Y. Feb. 27, 2025) ......................................43

*Cornelio v. Connecticut*,
  32 F.4th 160 (2d Cir. 2022) ...............................................................16

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ...............................................................38

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  586 U.S. 296 (2019)............................................................................35

*Grant v. Trump*,
  749 F.Supp.3d 423 (S.D.N.Y. 2024) ..................................................36

*Hachette Book Grp., Inc. v. Internet Archive*,
  115 F.4th 163 (2d Cir. 2024) .......................................................42, 45

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985)............................................................................37

*Hartmann v. Popcornflix.com LLC*,
  690 F. Supp. 3d 309 (S.D.N.Y. 2023) ................................................35

*Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*,
  634 F. Supp. 2d 1226 (D. Colo. 2009)................................................21

*Kregos v. Associated Press*,
  937 F.2d 700 (2d Cir. 1991) .......................................................*passim*

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
   279 F. Supp. 3d 497 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131
   (2d Cir. 2018)................................................................................43, 44

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) .................................................................47

*Marano v. Metro. Museum of Art*,
   844 F. App'x 436, 438 (2d Cir.), *cert. denied*,
   142 S. Ct. 213 (2021)............................................................................43

*Morris v. Bus. Concepts, Inc.*,
   259 F.3d 65 (2d Cir. 2001), reh'g, 283 F.3d 502 (2d Cir. 2002),
   and abrogated on other grounds by *Reed Elsevier, Inc. v.*
   *Muchnick*, 559 U.S. 154 (2010)...........................................15, 36, 37

*MyWebGrocer, LLC v. Hometown Info, Inc.*,
   375 F.3d 190 (2d Cir. 2004) .................................................................17

*New York Mercantile Exchange, Inc. v.*
   *IntercontinentalExchange, Inc.*,
   497 F.3d 109 (2d Cir. 2007) ...................................................28, 29, 33

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
   166 F.3d 65 (2d Cir. 1999) .............................................................40, 46

*O'Neil v. Ratajkowski*,
   563 F. Supp. 3d 112 (S.D.N.Y. 2021) ...................................................35

*Otto v. Hearst Commc'ns, Inc.*,
   345 F. Supp. 3d 412 (S.D.N.Y. 2018) ...................................................45

*Penske Media Corp. v. Shutterstock, Inc.*,
   548 F. Supp. 3d 370 (S.D.N.Y. 2021) ...................................................36

*Perales v. Sullivan*,
   948 F.2d 1348 (2d Cir. 1991) .................................................................4

*Rapaport USA, Inc. v. Nivoda USA LLC*,
   No. 25-CV-171 (JSR), ___ F. Supp. 3d ___,
   2025 WL 1275876 (S.D.N.Y. May 2, 2025) ...........................................6

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) ................................................................15

*Romanova v. Amilus Inc.*,
  __ F.3d __, 2025 WL 1479007 (2nd Cir. May 23, 2025) ......................16, 37, 46

*Sohm v. Scholastic Inc.*,
  959 F.3d 39 (2d Cir. 2020) .......................................................35

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998) .....................................................36

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) ...............................................17, 42, 44

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) ................................................43, 45

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*,
  765 F.Supp.3d 382 (D. Del. 2025) ................................................30

*Ticketmaster L.L.C. v. RMG Technologies, Inc.*,
  507 F.Supp.2d 1096 (C.D. Cal. 2007) .............................................42

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003) .....................................................17

*Twentieth Century Fox Film Corp. v. Cablevision Systems Corp.*,
  478 F.Supp.2d 607 (S.D.N.Y. 2007) ..............................................42

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
  996 F.2d 1366 (2d Cir. 1993) ....................................................40

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ....................................................38

**Statutes**

17 U.S.C. § 101 ..............................................................3, 5, 39, 40

17 U.S.C. § 102(a) ..............................................................17

17 U.S.C. § 102(b) ..............................................................17

17 U.S.C. § 106 ..................................................................................... *passim*

17 U.S.C. § 106(1) ..................................................................................39, 42

17 U.S.C. § 106(2) ..................................................................................39, 40

17 U.S.C. § 107 ................................................................................15, 42, 43

17 U.S.C. § 107(1) ........................................................................................43

17 U.S.C. § 107(2) ........................................................................................44

17 U.S.C. § 107(3) ........................................................................................44

17 U.S.C. § 107(4) ........................................................................................45

17 U.S.C. § 411 ....................................................................................15, 35

17 U.S.C. § 411(a) ........................................................................35, 36, 37

17 U.S.C. § 1201 et seq ...............................................................................38

28 U.S.C. § 1291 .............................................................................................3

28 U.S.C. § 1331 .............................................................................................3

28 U.S.C. § 1338(a) ........................................................................................3

**Rules**

Fed. R. App. P. § 39(a) ...............................................................................47

Fed. R. Civ. P. § 12(b)(6).................................................................. *passim*

Fed. R. Civ. P. § 15(a)(2) ...........................................................................47

Fed. R. Evid. § 201 .....................................................................................27

Local Rule § 28.1 ...........................................................................................5

**Other Authorities**

1 The Law of Copyright § 3:1.......................................................................17

1 The Law of Copyright § 3:9.......................................................................18

4 Patry on Copyright § 12:9........................................................40

# I.  PRELIMINARY STATEMENT

Rapaport is a leading information provider for the diamond industry.  On a weekly basis, Rapaport publishes to paid subscribers *The Rapaport Price List* (the "Price List").  The Price List expresses Rapaport's opinion of what should be the sales price of different types of diamonds.  The Price List does not state the actual sales price of any specific stone, which would be a fact.  Instead, Rapaport publishes its opinion of what should be the sales price for hypothetical diamonds and that opinion is expressed as a number.

As an expression of Rapaport's original opinion, the Price List is protected by copyright law – third parties may not exploit the price list absent Rapaport's permission.  There is analogous precedent in both this Circuit and the Ninth Circuit involving pricing opinions (e.g., of cars, of collector coins) that supports the conclusion that copyright law protects Rapaport from third parties exploiting its Price List without permission.  Which is exactly what Rapaport alleges Respondent, Nivoda USA LLC ("Nivoda"), is doing.

Rapaport commenced this copyright infringement action against Nivoda because Nivoda is wholesale pirating the Price List in connection with Nivoda's online diamond marketplace.  In doing so, Nivoda is violating Rapaport's exclusive rights under section 106 of the Copyright Act (17 U.S.C. § 106), including Rapaport's exclusive right to reproduce and prepare derivatives of the Price List.

Nivoda moved to dismiss Rapaport's complaint pursuant to Rule 12(b)(6), and the district court (Rakoff, J.) granted the motion with prejudice, finding that Rapaport's copyright infringement claim is barred by the merger doctrine. The merger doctrine provides that ideas which can be expressed in essentially only one way are not subject to copyright protection. That is because copyright law does not protect ideas – it protects the expression of ideas – and therefore the merger doctrine exists to avoid granting someone a monopoly for an idea.

In addressing the merger doctrine, the district court described the idea of the Price List as "the *market price* of diamonds based on their size, color, and clarity" (emphasis added) and asked "whether there are multiple ways to express the diamond prices featured on the List." Joint Appendix ("A") 563-64; Special Appendix ("SPA") 7-8. The district court concluded that there are not because "[t]he only way to express the price of a particular diamond or type of diamond is with the specific number corresponding to that price." A564; SPA 8.

That was error. The Price List does not state "market prices" of diamonds; it expresses Rapaport's opinion of what should the sales price of hypothetical diamonds. Even though that opinion is expressed as a number, there is no limit to what number Rapaport might select to express its opinion. Therefore, Rapaport's infringement claim is not barred by the merger doctrine.

2

At a minimum, it was error for the district court to dispositively apply the merger doctrine on a pre-answer Rule 12(b)(6) motion rather than after discovery. The allegations in Rapaport's complaint should have been accepted as true for purposes of the motion, and authority upon which the district court relied had denied a Rule 12(b)(6) motion so that merger could be explored following discovery.

Nivoda's motion to dismiss should have been denied. Because it was not, Rapaport now appeals to this court and asks that the district court be reversed.

## II. **JURISDICTIONAL STATEMENT**

This is an action for copyright infringement arising under the Copyright Act of 1976. 17 U.S.C. § 101 et seq. The district court had original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). The basis of this Court's jurisdiction is 28 U.S.C. § 1291.

In a bottom-line order entered April 10, 2025 (the "Order"), the district court (Rakoff, J.) granted Nivoda's pre-answer Rule 12(b)(6) motion to dismiss the complaint with prejudice. A556; SPA1. Rapaport filed a notice of appeal from the Order on April 25, 2025 (A557),[1] and that appeal received Second Circuit docket number 25-1065.

---

[1] Rapaport has been unable to locate a decision from this Court directly on point with respect to the finality, for purposes of 28 U.S.C. § 1291, of a bottom-line order like the subject Order. But a "final decision" is one that ends the litigation on

3

On May 2, 2025, the district court issued an opinion explaining its reasoning for the Order (the "Opinion"). A558-568; SPA2-12. In the Opinion, the District Court found that Rapaport's copyright infringement claim is barred by the merger doctrine and that amendment of the complaint would be futile. *Id.* That same day, a judgment was entered closing the case (the "Judgment"). A569; SPA 13. On May 7, 2025, Rapaport filed a notice of appeal from the Opinion and Judgment (A570), which was assigned Second Circuit docket number 25-1195 and then consolidated by this Court with the earlier docket number (25-1065).

## III. ISSUES PRESENTED FOR REVIEW

1. Does copyright law's merger doctrine apply to the Price List?

2. If the merger doctrine might ultimately apply to the Price List, was it nonetheless error for the district court to apply the merger doctrine on a Rule 12(b)(6) motion rather than exploring the issue following discovery?

3. Did Rapaport's complaint otherwise state a claim for copyright infringement?

---

the merits (*Perales v. Sullivan*, 948 F.2d 1348, 1353 (2d Cir. 1991)), and "[f]inality is determined on the basis of pragmatic, not needlessly rigid pro forma, analysis" (*Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 394 (2d Cir. 2023)). Here, even though the district court said than an opinion would be forthcoming, the Order explicitly dismissed Rapaport's complaint with prejudice. Accordingly, to avoid any issues with preserving appellate jurisdiction, Rapaport timely filed a notice of appeal from the Order.

## IV.    STATEMENT OF THE CASE

### A.    Local Rule 28.1 Statement

This is an action for copyright infringement arising under the Copyright Act of 1976.  17 U.S.C. § 101 *et seq*.  Rapaport commenced the action in the Southern District of New York on January 8, 2025.  A2.  The complaint asserts a single cause of action for copyright infringement against Nivoda.[2]  A8-17.  Rather than answer the complaint, on March 4, 2025, Nivoda moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint.  A19.  Rapaport opposed the motion, and the motion was fully briefed on April 1, 2025.  A5-6.  The district court held oral argument on April 7, 2025 (A529-555) and stated that it would provide its "bottom line order" within one week (A554-555).  During oral argument, the district court did not ask Rapaport anything about the merger doctrine and when Rapaport asked whether it could address issues that had not already been discussed (e.g., the merger doctrine), the district court said no.  A529-555.

On April 10, 2025, the district court (Rakoff, J.) issued its "bottom line order": the Order.  The Order granted Nivoda's motion to dismiss the complaint with prejudice.  A556; SPA1.  The Order also stated that an "[o]pinion explaining

---

[2] Rapaport voluntarily dismissed the other two originally named defendants – Nivoda's foreign affiliate and chief executive officer – to avoid a personal jurisdiction dispute.  A18.

the reasons for this ruling will issue in due course, after which final judgment will be entered." *Id.*

On May 2, 2025, the district court (Rakoff, J.) issued the Opinion. A558-568; SPA2-12. In the Opinion, the district court assumed without deciding that the Price List is copyrightable and that Nivoda has copied it; the district court then proceeded to consider the applicability of the merger doctrine. *Id.*, at n.3 and § III.A. The district court concluded that Rapaport's copyright infringement claim is barred by the merger doctrine and that amendment of the complaint would be futile. *Id.*, at §§ III.A and III.B.

That same day the Clerk of Court entered the Judgment, closing the case. A569; SPA 13.

The Opinion is reported at *Rapaport USA, Inc. v. Nivoda USA LLC*, No. 25-CV-171 (JSR), ___ F. Supp. 3d ___, 2025 WL 1275876 (S.D.N.Y. May 2, 2025).

## B.    <u>Rapaport's Copyright Infringement Claim Against Nivoda</u>

### 1.  <u>Summary Of Rapaport's Claim</u>

Rapaport creates the Price List and publishes it to Rapaport's paid subscribers. A8. The Price List has been published since the 1970s, it is the result of Rapaport's extensive hard work and expertise in the diamond industry, and it provides valuable transparency to a traditionally opaque market. *Id.* There are other publishers of diamond price lists. But due to the tremendous goodwill that

Rapaport has earned as an information provider in the diamond industry, buyers and sellers in the industry frequently use Rapaport's Price List as a benchmark on which they negotiate the sale of real-life stones. *Id.*

Nivoda is a well-funded start-up that offers an online marketplace for diamonds and gemstones. In connection with its marketplace, Nivoda is exploiting the Price List. However, Nivoda does not have Rapaport's permission to do so. A9. Accordingly, Rapaport sued Nivoda for copyright infringement. A8-17.

### 2. The Price List

Rapaport is the leading source of research, analysis, and news in the diamond industry. A10. One of the things that Rapaport' publishes is the Price List, which is available by paid subscription only and provides Rapaport's opinion as to the high cash asking price for round diamonds based on any given stone's size, color, and clarity. *Id.* In addition to the Price List, Rapaport publishes rapaport.com, RapNet.com, related websites, and published materials in a range of media (collectively the "Rapaport Sites"). *Id.*

Printed versions of the Price List present Rapaport's pricing opinion in tables that are organized by various criteria. *E.g.*, A25-28, 349-352. Each table concerns diamonds of a certain range of weights (carats). *Id.* For example, diamonds weighing between .01 and 0.3 carats are grouped together in a table, and diamonds weighing between .04 and .07 carats are grouped together in a different table. *Id.*

7

Each table has multiple columns and rows, with the columns representing different levels of diamond clarity and the rows representing different diamond colors. *Id.*

Printed versions of the Price List also state that:

- "It is illegal and unethical to reproduce this price sheet. Please do not make copies. © [year]" (A25, 189, 334, 349, 368, 382, 408, 434, 448, 463, 477, 492, 507, 521); and

- "Prices in this report reflect our opinion of NEW YORK HIGH CASH ASKING PRICES. These prices are often discounted and may be substantially higher than actual transaction prices. No guarantees are made and no liabilities are assumed as to the accuracy or validity of this information © [year] by Rapaport USA Inc. All rights reserved. Reproduction in any form is strictly prohibited." (*Id.*)

The information on the Price List is the unique product of Rapaport's analysis and sophisticated expert industry opinion derived from its extensive market research and proprietary knowledge, and from Rapaport's decades of knowledge, investment, and industry relationships. A10.

Rapaport has expended significant time, resources and expense: (i) creating and updating the Price List on a weekly basis; (ii) building and servicing industry and customer relationships; (iii) developing the content located at the Rapaport Sites; and (iii) earning public recognition as a quality and trusted source for analysis and other content that is highly valued by Rapaport's customers. A11.

Rapaport publishes the Price List weekly on Thursdays at 11:59pm EST, and each edition reflects changes in the global diamond markets. A11.

8

Rapaport also publishes a bi-monthly magazine that usually includes a copy of a recent version of the Price List. A24-118, 153-524.[3] The magazines that include a recent Price List also include a "guide" to the Price List. A64-65, 186-187, 331-332, 355-356, 365-366, 379-380, 395-396, 405-406, 421-422, 431-432, 445-446, 460-461, 474-475, 489-490, 504-505, 518-519.

The "guide" explains that the Price List is commonly used by dealers as a guideline for evaluating natural diamond prices, that it quotes Rapaport's opinion of high cash asking prices for diamonds meeting certain specifications (e.g., round brilliant shape with excellent cut, polish and symmetry), and that it is common for the diamond trade to transact at discounts from the Price List with the level of discount (or premium) influenced by many factors. *Id.*[4]

Each edition of the Price List is a work of authorship, protected by the Copyright Act, and the copyright of each edition is exclusively owned by Rapaport. A11. Rapaport has various federal copyright registrations for its

---

[3] For example, the July-August 2024 magazine includes the Price List dated August 9, 2024 (A345, 349); and the January 2022 magazine includes the Price List dated December 31, 2021 (A483, 492).

[4] In addition to a diamond's shape, weight, color and clarity, there could be numerous factors impacting the terms of sale for any particular real world stone. Is it a cash or credit transaction? Will payment be in a single lump sum or in installments? Is it a business-to-business or a business-to-consumer transaction? And so on.

magazines, which in turn cover the Price Lists printed therein. *Id.*; A129-150. Those registrations were listed in Rapaport's complaint. A11-12.

### 3. Nivoda's Willful Copyright Infringement

Nivoda offers an online diamond marketplace. A12, 22. Since approximately the summer of 2023, Nivoda has been exploiting the Price List, as updated from time to time, without Rapaport's permission. A12, 22-23, 120-125. Indeed, Nivoda's marketplace updates diamond prices nearly simultaneously with and in accordance with Rapaport's updates to the Price List.[5] A13.

As part of that marketplace, Nivoda exploits the Price List in at least two ways. A12.

*First*, for any given stone that is offered for sale on the marketplace, Nivoda displays the percentage difference between (a) the seller's offering price, and (b) Rapaport's opinion of what should be the sales price for a diamond with the same characteristics. A22-23, 120-125. For example, if Rapaport's opinion is that a round stone of W carats, X clarity, and Y color should sell for $1,000, and Nivoda's seller is offering a stone with the same characteristics for $900, then Nivoda displays a "Total Price" for that stone of "-10%" because the offering price of $900

---

[5] Rapaport believes Nivoda does this by improperly scraping or harvesting the information from Rapaport Sites; and/or by causing an authorized subscriber to breach the terms and conditions of their subscription. A13. However, the complaint was dismissed prior to Nivoda providing any discovery on this issue.

is ten percent less than Rapaport's opinion.  Below is an example submitted by

Nivoda, where the seller is offering a diamond at a 64.02% discount from the Price

List [A123]:



*Second*, Nivoda offers its users a "calculator" through which they may

calculate a sales price based upon either a positive or negative percentage

difference from Rapaport's opinion of what should be the sales price for a diamond

with the same characteristics.  A525-528.  In other words, users of Nivoda's

website can calculate the percentage difference between the price of a real-world

stone and Rapaport's opinion for a hypothetical stone of similar characteristics.

Below is an example of the calculator submitted by Nivoda, where the discount field is a reference to the difference from the Price List [A528]:



Nivoda provides these exploitations of the Price List to its own subscribers for free. A12, 14.

Nivoda does not have authorization from Rapaport to copy, publish, distribute, create derivatives of, display, or otherwise exploit the Price List. A12-13. At all relevant times, Nivoda knew that it did not have authorization from Rapaport to exploit the Price List. A13. Therefore, Nivoda's conduct constitutes a violation of Rapaport's exclusive rights under section 106 of the Copyright Act (17 U.S.C. § 106). *Id.*

Additionally, Nivoda is unfairly competing with others in the diamond industry who subscribe to or are otherwise authorized by Rapaport to use the Price List. A14. Diamond traders may choose to not purchase a subscription to the Price List from Rapaport, or they may choose to not use paid trading platforms that are

12

authorized to use the Price List (e.g., the Rapaport Site RapNet), if the traders can obtain the same information for free from Nivoda. *Id.*

Rapaport notified Nivoda that it was infringing Rapaport's copyright in the Price List and demanded that Nivoda cease and desist. *Id.* Nivoda, however, did not cease and desist. *Id.*

Accordingly, Rapaport brought this action. A8-17. In its complaint, Rapaport sought a judgment enjoining Nivoda from exploiting the Price List and awarding Rapaport monetary damages and attorney's fees. A16.

## V.  SUMMARY OF RAPAPORT'S ARGUMENTS

The district court's Opinion, finding that the merger doctrine applies to the Price List, is contrary to this Court's decision in *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports*, 44 F.3d 61 (2d Cir. 1994). In *CCC*, the infringer wholesale copied a book publisher's printed opinion as to the price of different types of used cars – which the publisher expressed as a number – and this Court held that the merger doctrine did not bar the publisher's copyright infringement claims. *Id.*, 44 F.3d at 68-73. The Opinion is also contrary to *CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999), where the Ninth Circuit found that the merger doctrine did not bar copyright claims concerning the plaintiff's published opinion as to the price of collector coins. *Id.*, 197 F.3d at 1257, 1261-62.

Both *CCC* and *CDN* are analogous to this case, where Rapaport publishes its opinion as to what should be the price of hypothetical diamonds, expressed as a number, and alleges that Nivoda is wholesale exploiting Rapaport's opinion without permission. In its Opinion, the district court did not meaningfully address either *CCC* (used cars) or *CDN* (collector coins) and did not appreciate that there is a broad array of numbers that Rapaport could select to express its pricing opinion. Instead, the district court relied upon distinguishable cases where there was virtually no other number that the publisher could select. The merger doctrine does not bar Rapaport's infringement claims, and therefore the district court should be reversed.

Additionally, even if this Court concludes that the merger doctrine may ultimately apply to the Price List, it was error for the district court to dispositively determine the issue on a Rule 12(b)(6) motion. "Determining when the idea and its expression have merged is a task requiring considerable care." *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991). Rather than dismiss Rapaport's original complaint with prejudice, at a minimum the district court should have granted Rapaport leave to amend its complaint, or denied the motion to dismiss and allowed the merger doctrine to be examined following the close of discovery. That is what happened earlier in the procedural posture of one of the cases discussed in the Opinion: merger was found not to be proper for

14

determination on a Rule 12 motion, *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 608 (S.D.N.Y. 2010) ("*BanxCorp I*"), and instead was decided at summary judgment, *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280 (S.D.N.Y. 2013) ("*BanxCorp II*").

Lastly, Nivoda made other arguments before the district court, and to the extent that those argument are considered on *de novo* review, they should be rejected by this Court. First, Rapaport sufficiently pleaded pre-litigation copyright registrations for the Price List (17 U.S.C. § 411) and there is no requirement for Rapaport to have a standalone registration for the Price List. *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001).[6] Second, the Price List is protectible under copyright law as an expression of Rapaport's opinion and not of facts (*CDN*, 197 F.3d at 1257 and 1262), and Rapaport sufficiently alleged that Nivoda is violating at least one of Rapaport's exclusive rights under section 106 of the Copyright Act (17 U.S.C. § 106). Nivoda's motion papers confirm that it is reproducing and preparing derivatives of the Price List. Third, fair use is not a viable defense in this copyright case on a Rule 12(b)(6) motion, especially where Nivoda is fully usurping Rapaport by offering the entirety of the Price List for free to Nivoda's users. 17 U.S.C. § 107. Lastly, if the complaint failed to state a claim,

---

[6] As clarified on denial of reh'g, 283 F.3d 502 (2d Cir. 2002), and abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

then Rapaport should have been granted leave to amend rather than having its complaint dismissed with prejudice.

## VI.  STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.  *Romanova v. Amilus Inc.*, __ F.3d __, 2025 WL 1479007, *2 (2nd Cir. May 23, 2025) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  "A court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022).  "Consequently, a complaint will survive a motion to dismiss under Rule 12(b)(6) if it alleges facts that, taken as true, establish plausible grounds to sustain a plaintiff's claim for relief."  *Id.*

## VII.  ARGUMENT

### A. The Merger Doctrine Does Not Apply To The Price List

The district court concluded that the merger doctrine applies to the Price List because Rapaport expresses its opinion as a number and there is only one way to express that number.  A561-566; SPA5-10.  That was error, and the Opinion is contrary to both (i) *CCC*, where the merger doctrine did not apply to pricing opinions for used cars expressed as numbers; and (ii) *CDN*, where similarly the

merger doctrine did not apply to pricing opinions for collector coins expressed as numbers. In analyzing the merger doctrine, the court's focus should be on the broad range of numerical possibilities that Rapaport could adopt for its pricing opinion, which in theory is infinite.

1. The Merger Doctrine, Generally

Copyright law protects "original works of authorship fixed in any tangible medium of expression…" 17 U.S.C. § 102(a). But copyright law does not protect ideas. 17 U.S.C. § 102(b). This is commonly referred to as the idea-expression dichotomy. 1 The Law of Copyright § 3:1.

"The fundamental copyright principle that only the expression of an idea and not the idea itself is protectable has produced a corollary maxim that even expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *Kregos*, 937 F.2d at 705. This is the merger doctrine, which ensures "that protection not extend to ideas." *CCC*, 44 F.3d at 71.

"The merger doctrine bars a copyright of even original expression when there is essentially only one way to express an idea" and thus "the idea and its expression are inseparable." *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 194 (2d Cir. 2004). *See also*, *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 n.4 (2d Cir. 2003).

17

"The merger doctrine has a limited range of application as it will apply only in those cases where there is little or no choice possible in the ways of expressing the idea, and the cases where this is genuinely true are relatively few and far between." 1 The Law of Copyright § 3:9.

Here, the district court concluded that the merger doctrine applies. It concluded that the idea of the Price List "is the *market price* of diamonds based on their size, color, and clarity" (emphasis added), and therefore "the key question is whether there are multiple ways to express the diamond prices featured on the List." A563-564; SPA7-8. The district court concluded that there are not because "[t]he only way to express the price of a particular diamond or type of diamond is with the specific number corresponding to that price." *Id.* But that was a misapplication of the merger doctrine because the Price List involves matters of Rapaport's personal opinion (*Kregos*), and the Opinion conflicts with both the *CCC* and *CDN* cases involving pricing opinions.

"Determining when the idea and its expression have merged is a task requiring considerable care: if the merger doctrine is applied too readily, arguably available alternative forms of expression will be precluded; if applied too sparingly, protection will be accorded to ideas." *Kregos*, 937 F.2d at 705. In this case, the merger doctrine was "applied too readily" to the Price List. *Id.*

18

2. <u>The Merger Doctrine Does Not Apply To Soft Ideas Involving Matters Of Taste And Personal Opinion</u>

In *Kregos*, this Court held that the merger doctrine did not apply, and that the plaintiff was entitled to a trial on his copyright claim, where the work at issue involved "matters of taste and personal opinion." *Id.* at 707. Likewise, here the numbers expressed on the Price List are matters of "taste and personal opinion." The Price List does not report historical transactional prices or the "market price" of diamonds, but rather reflects Rapaport's original opinion. The merger doctrine does not apply.

In *Kregos*, the plaintiff had created a form to be used to help predict the outcome of a baseball game by filling in nine statistics of the competing pitchers. The defendant contended that the copyright owner's idea was the utility of the nine selected statistics in helping a fan predict the outcome, and that the idea was merged in the expression of it—in the form that listed those nine statistics.

Recognizing that the purpose of the merger doctrine is to make sure that copyright protection does not extend to ideas, the *Kregos* opinion went on to describe different categories of ideas. It distinguished between, on the one hand, those ideas that undertake to advance the understanding of phenomena or the solution of problems (e.g., identifying symptoms that are the most useful in identifying the presence of a particular disease); and those, like the pitching form

19

there at issue, that do not undertake to explain phenomena or furnish solutions but instead are infused with the author's taste or opinion.

*Kregos* postulated that the importance of keeping ideas free from private ownership is far greater for ideas of the first category, directed to the understanding of phenomena or the solving of problems, than for those that merely represent the author's taste or opinion and therefore do not materially assist the understanding of future thinkers. As to the latter category, *Kregos* asserted that, so long as the selections reflected in the compilation "involve matters of taste and personal opinion," there is no serious risk that withholding the merger doctrine would inflict serious injury on the policy underlying the rule that forbids granting protection to an idea. 937 F.2d at 707. This contrasted with analyses belonging to the first category – building blocks of understanding – as to which "protecting the [necessary] 'expression' of the selection would clearly risk protecting the idea of the analysis." *Id*. Because the *Kregos* plaintiff's idea was of the soft type infused with taste or opinion, this Court withheld application of the merger doctrine.

In this case, the numbers expressed in the Price List are Rapaport's opinion. The Price List and the numbers expressed therein are not directed to the understanding of phenomena or the solving of problems, nor do the numbers express the actual market price of any real-world diamond. The idea of the Price

20

List – Rapaport's pricing opinion – is the "soft type" described in *Kregos* and therefore the merger doctrine should not be applied.

Like in *Kregos*, withholding application of the merger doctrine to the Price List (which is infused with "taste and opinion") will carry out the statutory policy to protect innovative compilations without impairing the policy that requires public access to ideas of a more important and useful kind. *See also*, *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1235-37 (D. Colo. 2009) (merger doctrine did not bar copyright protection of healthcare provider rankings, which were original compilations of data and information from variety of sources that were analyzed and weighed using proprietary methodologies to produce rating of 1, 3, or 5 stars and/or awards for each healthcare provider reviewed).

### 3. The Merger Doctrine Did Not Apply In *CCC*, A Second Circuit Case Involving A Publisher's Opinion Of Used Car Prices

In *CCC*, this Court held that the merger doctrine did not apply to a publisher's opinion of the price of used cars, which was also expressed as a number corresponding to that price. 44 F.3d 61. *CCC* is analogous to this case, but was not meaningfully addressed in the district court's Opinion.

In *CCC*, the defendant published the "Red Book," which was a list of used car values for various regions of the United States. The valuation figures given in the Red Book were not historical market prices, quotations, or averages. The Red

21

Book listed the defendant editors' projections of the value of different kinds of used cars for six weeks after publication. The plaintiff was a competitor that provided information through a computer database (rather than a book) and had used the defendant's values – i.e., copied the defendant's numbers – in compiling its computer database. The plaintiff brought a declaratory judgment action, in which defendant counterclaimed for infringement, and the district court found at summary judgment that the values were facts and thus not copyrightable.

This Court reversed on appeal, holding that the valuations were not "pre-existing facts that had merely been discovered by the Red Book editors," but instead "represented predictions by the Red Book editors of future prices estimated to cover specified geographic regions." *CCC*, 44 F.3d at 67. "These predictions were based not only on a multitude of data sources, but also on professional judgment and expertise." *Id.* Similarly in this case, the Price List does not list facts and instead expresses Rapaport's opinion based upon Rapaport's professional judgment and expertise.

As to merger, the alleged infringer in *CCC* had argued that (1) each entry in the Red Book expressed the authors' idea of the value of a particular vehicle; (2) to the extent that "expression" is to be found in the Red Book's valuations, such expression is indispensable to the statement of the idea and therefore merges with the idea, so that the expression is also not protectible; and (3) because each of Red

Book's valuations could freely be taken without infringement, all of them may be taken without infringement. 44 F.3d at 68. This Court, however, rejected those arguments. *Id.*, at 68-70.

This Court's decision was "based on the need to balance the conflicts and contradictions that pervade the law of copyright, and the need, where elements of the copyright law conflict, to determine, as a policy judgment, which of its commands prevails over the other." *Id.* One of the conflicts and contradictions that pervades copyright law is the idea-expression dichotomy, and "bewildering problems of interpretation as to whether copying has been of protected expression or of the unprotected ideas underlying the expression." *Id.*

Judge Leval wrote that (i) applying the merger doctrine in *CCC*, where the copying was so extensive that the plaintiff effectively offered to sell its customers the defendant's Red Book, would "effectively destroy all protection" for the Red Book, and (ii) the ideas contained in the Red Book were of the "suggestion-opinion category" and therefore "withholding of the merger doctrine would not seriously impair the policy of the copyright law that seeks to preserve free public access to ideas." *CCC Info. Servs.*, 44 F.3d at 68-73.

The same is true in this case. Rapaport offers the Price List to its own paid subscribers and alleges that Nivoda is exploiting the entirety of the Price List and offering it to Nivoda's customers for free in connection with its online

marketplace. Applying the merger doctrine "would effectively destroy all protection" for the Price List, which is of the "suggestion-opinion category" and therefore not barred from copyright protection by the merger doctrine. *Id.*, at 72.

The numbers Nivoda copies from the Price List are statements of opinion by Rapaport, not ideas of the first, building-block, category described in *Kregos*. The valuations in the Price List explain nothing, and describe no method, process or procedure; nor is Rapaport attempting to monopolize the idea of a price list for diamonds. Just as the Red Book's entries were no more than the predictions of Red Book editors of used car values for six weeks on a rough regional basis (*id.*, at 72-73), the entries on the Price List are Rapaport's pricing opinion. The Price List is similarly of the suggestion-opinion category and applying the merger doctrine to allow Nivoda to wholesale copy the price list would be contrary to the purpose of copyright law. *CCC*, 444 F.3d at 70-72. Nivoda remains free to value diamonds and to profit from its own valuations; but the merger doctrine does not protect Nivoda's wholesale copying of what is original to Rapaport. *CCC*, at fn. 28.

4. The Merger Doctrine Did Not Apply In *CDN*, A Ninth Circuit Case Involving A Publisher's Opinion Of Collector Coin Prices

This case is also analogous to the Ninth Circuit's decision in *CDN*, where the Court was faced with the question "whether prices listed in a wholesale coin price guide contain sufficient originality to merit the protection of the copyright laws." *CDN*, 197 F.3d at 1257. The *CDN* court held that published lists of

wholesale prices for collectible coins contained sufficient originality to sustain copyright protection. This was because the prices were not facts, but were estimates based on empirical research. The prices in *CDN* were "wholly the product of [CDN's] creativity." *CDN*, 197 F.3d at 1260. They, like Rapaport's opinion as to what should be the sales prices for different classes of hypothetical diamonds, were therefore "not mere listings of actual prices paid; rather, they [were] CDN's best estimate of the fair value of [each] coin." *Id.* For that reason, the lists were copyrightable; so is the Price List.

In his defense, the *CDN* defendant argued that the merger doctrine applied because "a price is an idea of the value of the product, which can be expressed only using a number." *CDN*, 197 F.3d at 1261. But the Ninth Circuit rejected this argument. *Id.*, at 1261-62. The Ninth Circuit observed that the plaintiff "does not, nor could it, claim protection for its idea of creating a wholesale price guide, but it can use the copyright laws to protect its idea of what those prices are. Drawing this line preserves the balance between competition and protection: it allows [the plaintiff's] competitors to create their own price guides and thus furthers competition, but protects [the plaintiff's] creation, thus giving it an incentive to create such a guide." 197 F.3d at 1262. Therefore, the merger doctrine did not bar copyright protection in *CDN*.

Likewise, here, Rapaport does not claim protection for its idea of creating a price list for diamonds; others in the diamond industry are free to publish their own pricing opinions, and indeed there are other who do so. But Rapaport can use copyright law to protect its idea of what those prices are. Granting copyright protection to the Price List protects Rapaport's creation and gives it an incentive to create the Price List.

5. <u>The Merger Doctrine Similarly Should Not Apply In This Case, Involving Rapaport's Opinion Of Diamond Prices</u>

Like the prices for collector coins in *CDN* and the prices for used cars in *CCC*, in this case the Price Lists are not mere listings of actual prices paid for diamonds; rather, they are Rapaport's pricing opinion. To arrive at its opinion, Rapaport sufficiently pleaded that it employs a process that satisfies the minimal degree of creativity required for copyright protection. A8, 10.

The district court misstated the idea of the price list. The idea of the price list is not, as described by the district court, "the *market price* of diamonds based on their size, color, and clarity" (emphasis added). A563; SPA7. The Price List does not report the market price of diamonds.

Instead, the idea of the Price List is an expression of Rapaport's opinion of what should be the sales price for different categories of diamonds. This idea is printed right on the face of the Price List: "Prices in this report reflect our opinion of NEW YORK HIGH CASH ASKING PRICES." *E.g.*, A25, 349. This idea is

26

also reflected in Rapaport's bi-monthly magazines that include editions of the Price List; the guide, which is printed in the magazines on the pages just prior to the Price List, states that the Price List quotes Rapaport's opinion of high cash asking prices for diamonds meeting certain specifications (e.g., round brilliant shape with excellent cut, polish and symmetry). A64-65, 186-87, 331-332, 355-356, 365-366, 379-380, 395-396, 405-406, 421-422, 431-432, 445-446, 460-461, 474-475, 489-490, 504-505, 518-519.

There are a broad range of numbers that Rapaport could select to express its opinion. Rapaport's opinion as to the price of any category of diamond could theoretically be expressed infinite ways, from $0.01 to $1 million and beyond. This is confirmed by the fact that there are third parties who publish their own diamond pricing opinions, and their opinions are not always consistent with Rapaport's opinion.[7]

Lastly, even if the district court's characterization of the idea were accurate ("the market price of diamonds based on their size, color, and clarity"), Rapaport could alter the number by changing various criteria. For example, Rapaport has

---

[7] Rapaport requested that the district court take judicial notice (Fed. R. Evid. 201) [Doc. 30, p. 20 of 31 at n.4], and likewise asks this Court to take judicial notice, that other diamond price lists exist in the market. E.g., Polygon (https://www.polygon.net/jwl/public/diamonds/diamond-price-report-en.jsp), Idex (http://www.idexonline.com/diamond_prices_Lp), and Diamond Registry (https://www.diamondregistry.com/diamond-price-list/).

different pricing for stones weighing between .01 - .03 carats than those weighing between .04 - .07 carats. *See* the tables on the Price List. But Rapaport could draw a different line; Rapaport could distinguish those stones weighing between .01 - .05 carats than those weighing between .06 - .09 carats. Similarly, for lower weight diamonds Rapaport lumps together stones of different colors (identified on the price list by alphabetical letters D-N). Rapaport does not necessarily need to lump them together, or it could lump them together differently (e.g., D-G rather than D-F). Rapaport could also consider other potential sales terms (e.g., cash vs. credit, business-to-business vs. business-to-consumer transactions).

"As long as selections of facts involve matters of taste and personal opinion, there is no serious risk that withholding the merger doctrine will extend protection to an idea." *Kregos*, 937 F.2d at 707. In this case, there is no serious risk that "withholding the merger doctrine will extend protection to an idea." *Id.*

## B.   The Cases Relied Upon By The District Court Are Distinguishable

In its Opinion, the district court did not address *CCC* and *CDN*'s rejection of the merger doctrine. Instead, the district court relied upon this Court's decision in *New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109 (2d Cir. 2007), and *BanxCorp II*. *N.Y. Mercantile* concerned the settlement prices for futures contracts, and in the *BanxCorp* case the plaintiff claimed exclusive rights to a particular percentage (3.95%) that was the national average

28

interest rate for five-year certificates of deposit as of a certain date. Neither case is on-point with respect to application of the merger doctrine to the Price List.

In *N.Y. Mercantile*, this Court was called upon to decide whether the plaintiff could enforce a copyright in the settlement prices for certain commodities that the plaintiff produced to value customers' open positions. 469 F.3d 109. This Court held, at summary judgment, that even if the prices were created by the plaintiff (a question the Court did not resolve) there was no infringement because enforcing the copyright would effectively accord protection to the idea itself.

In doing so, the Court looked at the range of possible expressions and considered whether all possible expressions were so substantially similar that granting copyright protection would bar others from expressing the underlying idea. *Id.*, at 117-18. The plaintiff was unable to survive summary judgment because it did not demonstrate that there was a broad range possible settlement prices that existed.

This Court did not hold that the merger applied because all possible expression took the same form, a number. In the Opinion in this case, the district court respectfully misunderstood the *N.Y. Mercantile* decision as standing for the proposition that the merger doctrine applies where all possible forms of expression are a number. In *N.Y. Mercantile*, the merger doctrine applied because the possible range of that number was small; any settlement price for a particular futures

contract would be determined based on the same underlying market facts, meaning that any dissension would be exceptionally narrow. The plaintiff was unable to demonstrate a range of possible variations that would preclude application of the merger doctrine. *Id.* at 117-18.

Here, there is absolutely nothing in the record to reflect that Rapaport has only a limited range of expressing its opinion or that it is scientifically calculated upon market facts. To the contrary, there is a broad number of ways to express Rapaport's opinion as to what should be the price of a category of diamonds and therefore the merger doctrine does not apply. *E.g.*, *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F.Supp.3d 382, 396 (D. Del. 2025) (rejecting merger defense because "there are many ways to express points of law from judicial opinions...").

Yes, Rapaport expresses its pricing opinion as a number. But Rapaport's opinion as to the price of any category of diamond could theoretically be expressed infinite ways, from $0.01 to $1 million and beyond. Of course, in order to have credibility (and therefore subscribers to the Price List), Rapaport does not select numbers out of thin air; it is not merely throwing darts at a board. But Rapaport's opinion is just that, an opinion that can vary based upon whatever criteria Rapaport selects. It is more art than science.

Additionally, the *N.Y. Mercantile* Court recognized that policy considerations weigh heavily in determining the appropriate application of the merger doctrine. *Id.* at 118. The objective of copyright law is to promote the advancement of knowledge and learning by giving authors economic incentives. *Id.*, citing *CCC*, 44 F.3d at 65. The *N.Y. Mercantile* court found that the plaintiff did not need those financial incentives: the plaintiff was required by law to record settlement prices, and settlement prices were needed to establish a functioning commodities market. Therefore, even without copyright in the settlement prices the Court was confident that the plaintiff would not direct its energies elsewhere. *Id.*

But here, policy considerations weigh heavily against application of the merger doctrine. Application of the merger doctrine creates a financial disincentive for Rapaport to create and publish the Price List – a valuable resource to the diamond trade, as confirmed by Nivoda's wholesale pirating of the Price List. Rapaport is not required by law or the market to publish the Price List, and it is disincentivized from publishing the Price List if others are allowed to exploit it without Rapaport's permission for free. Further, there can be a functioning diamond market without the Price List.

Turning to the *BanxCorp* case, the district court in this case misunderstood the *BanxCorp II* decision as holding that the merger doctrine applies when

31

information is expressed as a number. In *Banxcorp II*, the merger doctrine applied, at summary judgment, because the defendant established that there was very low variation in possibilities for that number. The number at issue in *BanxCorp II* was the average interest rate for certificates of deposit. The plaintiff used a simple mathematical formula to calculate that average, using the published rates of major banks, and represented to the public that the averages were objective facts. The court concluded that those facts were not copyrightable.

Here, nothing in the record reflects that Rapaport is using a simple mathematical formula to calculate an average or representing to the public that the numbers in the Price List are objective facts; to the contrary, the Price List says on its face that it is Rapaport's opinion.

The *BanxCorp II* court also found that the merger doctrine applied. The plaintiff in that case faced the same issue as in *N.Y. Mercantile*: an extremely narrow variation in possible numbers.

The *BanxCorp II* decision applied the merger doctrine because there essentially was only one number to present based upon the mathematical calculations of arriving at an average. No wide variation seemed possible because the average bank rate statistic was based upon actual, easily measurable rates being charged by various financial institutional around the country. Plaintiff failed to establish that there could be meaningful variations. *Id.* at 310-11.

32

The *BanxCorp* plaintiff did call their number a "benchmark." *Id.* But usage of the term "benchmark" was in a different sense than Rapaport uses the term (e.g., in the complaint). The *BanxCorp II* "benchmark" presented consumers with an average. Here, Rapaport's opinion is a "benchmark" because Rapaport has established tremendous goodwill in the industry and so the industry uses Rapaport's respected opinion as a starting point for negotiations. Rapaport should not be denied copyright protection merely because its opinion is highly respected in the diamond industry.

**C.      At A Minimum, The District Court Should Not Have Applied The Merger Doctrine Until After Discovery**

In this case, the merger doctrine does not apply to the Price List and the Court can make that determination at this stage based upon *CCC* and *CDN*. But even if this Court concludes that the merger doctrine might ultimately apply, then in deciding whether the doctrine applies to the facts of this case should only be after discovery. Both *N.Y. Mercantile* and *BanxCorp II* were decided on summary judgment, after the plaintiffs had been given an opportunity, following discovery, to demonstrate whether there were multiple ways to express the idea.

Rapaport, however, has not been given that opportunity. Here, the district court dismissed Rapaport's original complaint, with prejudice, prior to the completion of discovery and based solely upon the allegations in the complaint and Nivoda's submissions. That was error, especially because Rapaport's allegations in

the complaint should be accepted as true for purposes of a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Even in the *BanxCorp* case, the court had earlier denied a Rule 12 motion where the defendant had argued the merger doctrine applied; the *BanxCorp I* court found that it "cannot say that as a matter of law it is implausible that the BanxQuote Indices are sufficiently subjective that a wide range of potential final values would be possible" and instead concluded that the plaintiff would have to confront the merger issue during discovery and at summary judgment. *BanxCorp I*, 723 F. Supp. 2d at 608. The *BanxCorp I* decision determined that it was not appropriate to address the merger issue in the context of a motion to dismiss, because the nature of the inquiry "argues in favor of allowing parties to present evidence on this issue." *Id.*

If this Court concludes that the merger doctrine might eventually apply to the Price List, then at a minimum Rapaport should be given the opportunity to amend its complaint to provide further details about, e.g., how it creates its pricing opinion and the range of numbers it could select. The Price List is the result of a rigorous, human-driven editorial process, informed by extensive data collection, analysis, and professional judgment; such allegations could be included in an amended complaint. Or, Rapaport should be permitted to proceed on the original

complaint and then have the issue decided at summary judgment or trial, following discovery.

### D.    <u>The Complaint Otherwise Stated A Claim</u>

Because this Court undertakes a *de novo* review, Rapaport also briefly addresses the other arguments Nivoda made in the district court.

### 1.  <u>Rapaport Sufficiently Pleaded Pre-Action Copyright Registrations For The Price List</u>

Section 411 of the Copyright Act provides in pertinent part, "…no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). A copyright registration is, in layperson's terms, a copyright plaintiff's ticket in the door to federal court. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019); *Sohm v. Scholastic Inc.*, 959 F.3d 39, 52–53 (2d Cir. 2020). A copyright owner can recover for infringement that occurred both before and after registration. *Fourth Estate*, 586 U.S. at 299.

A copyright plaintiff's complaint does not need to attach copies of the registration certificates or even provide registration numbers for all the copyrights at issue to survive a motion to dismiss. *Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 318–19 (S.D.N.Y. 2023) (collecting cases). "Bare bones" allegations are sufficient to plead registration. *O'Neil v. Ratajkowski*, 563 F. Supp.

3d 112, 134 (S.D.N.Y. 2021); *Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370 (S.D.N.Y. 2021).

In this case, Nivoda argued that the complaint should be dismissed because Rapaport did not identify standalone copyright registrations for the Price List (or editions thereof). Instead, paragraph 20 of the complaint identified eight copyright registrations for Rapaport's bi-monthly magazine. A11-12. But Rapaport did not require standalone registrations for the Price List. Pursuant to this Court's decision in *Morris*, the copyright registrations for the magazines are sufficient. *Morris*, 259 F.3d at 68.

"Under the law of this Circuit, where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part." *Morris*, 259 F.3d at 68; *also*, *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746-47 (2d Cir. 1998); *Grant v. Trump*, 749 F.Supp.3d 423, 430-34 (S.D.N.Y. 2024).

Nivoda submitted printouts from the Copyright Office's online database that reflect pre-action copyright registrations. A126, 129-150. They show that the registered magazines are collective works with ownership solely claimed by Rapaport. A129-150. As the owner of the copyright for the collective works (i.e., the magazines) and the owner of the copyright for a constituent part of that work

(i.e., the Price List), Rapaport's pleaded registrations are sufficient to permit an infringement action under section 411(a) for the constituent part (i.e., the Price List). *Morris*, 259 F.3d at 68.[8]

### 2. The Complaint Stated A Prima Facie Case Of Copyright Infringement

To state a prima facie case of copyright infringement, a plaintiff must plausibly allege: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020). "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in [17 U.S.C.] § 106." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010).

Section 106 of the Copyright Act, 17 U.S.C. § 106, "confers a bundle of exclusive rights to the owner of the copyright". *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546–47 (1985). This bundle of rights include: the exclusive right to reproduce, publish, distribute, display, and to prepare derivatives of the work. 17 U.S.C. § 106.

"These exclusive rights give artists financial incentives for artists to create, and their creations inure to the benefit of the public." *Romanova*, 2025 WL

---

[8] Nivoda also submitted deposit copies from the Copyright Office and asserted that two of the eight magazines cited in the complaint do not actually contain a price list. A151-152. Even if that is correct, Rapaport still has a viable copyright claim for the six other cited registered editions of the Price List. Rapaport need only demonstrate infringement of one work.

1479007, at *3. To prevail on a claim of direct copyright infringement, Rapaport need only establish a violation of at least one exclusive right granted to it under section 106. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019).

Rapaport sufficiently alleged a violation of its exclusive rights under section 106. Additionally, the materials that Nivoda submitted to the district court confirmed that Nivoda is violating Rapaport's exclusive rights to *reproduce* and create *derivatives* of the price list.

In support of its motion, Nivoda focused on a copyright owner's right of *display* and *publication*. A22 (at ¶ 7, "…there is not and never has been any publication or display of any price (or any other content) from the Rapaport Price List on the Nivoda website.").[9] Nivoda asked the district court to perform a visual comparison of the Price List with cherry-picked screenshots from Nivoda's website, and argued that Rapaport failed to state a claim because the Price List does not visually appear on Nivoda's website.[10]

---

[9] Nivoda also stated, "[t]here is not and never has been any mention of Rapaport or the Rapaport Price List on the Nivoda website…" (A22). Whether Nivoda has "mentioned" Rapaport is irrelevant to whether Nivoda has infringed Rapaport's rights under section 106. However, it is relevant to Nivoda's willfulness and to any potential claim under sections 1201-1202 of the Copyright Act (17 U.S.C. § 1201 et seq.), concerning the removal or alteration of copyright management information.

[10] The screenshots were not properly before the district court on a Rule 12(b)(6) motion. But even if deemed "integral" to the complaint, they were not properly authenticated by Nivoda. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d

38

Even assuming, *arguendo*, that it was proper for the district court to consider those screenshots (which were outside the four-corners of the complaint), Nivoda took too narrow a view; section 106 also gives Rapaport the exclusive right to *reproduce* and to prepare *derivatives* of the price list. "Display" and "publication" are terms of art in copyright law, both of which are defined by the statute (17 U.S.C. § 101) and both of which are separate and distinct rights from Rapaport's exclusive rights to *reproduce* and prepare *derivatives* of the Price List (17 U.S.C. § 106(1) and (2)).

Even if Nivoda has never published or displayed the Price List, Rapaport alleged in paragraphs 3 and 22-23 of its complaint that Nivoda has both copied the Price List and created a derivative of the Price List. A9, 12. Nivoda did not deny reproducing or creating derivatives of the Price List. Nor could Nivoda deny doing so because the screenshots submitted by Nivoda confirm that Nivoda is willfully doing so in violation of Rapaport's exclusive rights.

Nivoda's first set of screenshots showed certain diamonds for sale on Nivoda's website, which included a description of each diamond, the sales price, and a percentage by which such price differs from Rapaport's price opinion for that

---

Cir. 2010) ("even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document"). Nonetheless, if they are accurate depictions of Nivoda's website then they support Rapaport's infringement claim.

category. A22-23, 120-125. Nivoda's second set of screenshots showed a price calculator which, in Nivoda's terminology, "references a percentage discount from the relevant industry-standard benchmark Rapaport price." A525-528.

Both the price calculator and percentage discount on Nivoda's website are unauthorized *derivatives* of the Price List. A "derivative work" is defined in the Copyright Act as:

> …a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a whole, represent an original work of authorship, is a "derivative work." [17 U.S.C. § 101.]

A derivative work is, by definition, not exactly the same as the work from which it is derived, and creation of an unauthorized derivative work is an enumerated basis for a finding of copyright infringement. 17 U.S.C. § 106(2); *see also*, *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 143 (2d Cir. 1998); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1373 (2d Cir. 1993).

There are many different types of derivative works, including abstracts. *E.g.*, *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 70 (2d Cir. 1999); *see also*, 4 Patry on Copyright § 12:9. In addition to Rapaport's allegations in paragraphs 22-23 of the complaint that Nivoda has prepared

40

unauthorized derivatives of the Price List (A12), Nivoda's submissions confirmed that its website recasts, transforms, and adapts the Price List by using Rapaport's opinion as a benchmark and then displaying a percentage difference between Rapaport's opinion and the listed (or contemplated) sale price. A120-125, 525-528.

Additionally, Rapaport alleged in paragraph 30 of the complaint that Nivoda is copying the Price List nearly simultaneously with Rapaport's weekly published updates (A13) and Nivoda's submissions reflect that Nivoda is reproducing the Price List so that it can display the percentage difference calculation. Nivoda did not deny that it reproduces the Price List verbatim as part of its internal processes (e.g., computer code/algorithm). A21-23, 525-526. Nor could it because Nivoda reproduces the Price list to display the discount percentages: any mathematical computation of a percentage discount from the Price List necessarily uses the Price List number as part of the calculation. As a matter of mathematical certainty, Nivoda is copying the Price List.

Unauthorized reproductions, even if only for defendant's internal purposes, constitutes an infringement of the copyright owner's exclusive right to make reproductions. *Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 4 (S.D.N.Y.

1992) (photocopying eight articles from a scientific journal by for use by researchers was not fair use).[11]

Nivoda's copying of the Price List as part of or in relation to its computer code to generate the display of the percentage discount violates Rapaport's exclusive right to reproduce the Price List. 17 U.S.C. § 106(1); *accord*, *Twentieth Century Fox Film Corp. v. Cablevision Systems Corp.*, 478 F.Supp.2d 607, 621 (S.D.N.Y. 2007) (portions of television programs temporarily stored in buffer memory during operation of computer were "copies" for purposes of the Copyright Act); *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F.Supp.2d 1096, 1105-06 (C.D. Cal. 2007) (copies of webpages stored automatically in a computer's cache or random access memory (RAM) fell within the Copyright Act's definition of "copy"). The Price List is being copied by Nivoda, even if only on Nivoda's computer system and then resulting in the derivative display of the percentage discount on its website.

### 3. Fair Use Is Not A Viable Defense

Fair use is an affirmative defense to copyright infringement. 17 U.S.C. § 107; *generally*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994). Because it presents a mixed question of law and fact (*Hachette Book Grp., Inc. v. Internet*

---

[11] Amended (Oct. 26, 1992), *aff'd*, 37 F.3d 881 (2d Cir. 1994), order amended and superseded, 60 F.3d 913 (2d Cir. 1994), and *aff'd*, 60 F.3d 913 (2d Cir. 1994).

*Archive*, 115 F.4th 163, 177 (2d Cir. 2024)), fair use "is rarely resolved at the motion to dismiss stage." *Cobb v. Am. Urb. Radio Networks LLC*, 2025 WL 641437, at *4 (S.D.N.Y. Feb. 27, 2025). *See also*, *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023).[12]

The doctrine of fair use, derived from common law, is now codified in section 107 of the Copyright Act, which provides four nonexclusive factors to guide courts' fair use determinations. 17 U.S.C. § 107; *TCA Television Corp. v. McCollum*, 839 F.3d 168, 177–79 (2d Cir. 2016). In this case, both the complaint and the materials submitted by Nivoda confirm that the four fair use factors heavily favor Rapaport.

The first fair use factor – which is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes" – strongly favors Rapaport. 17 U.S.C. § 107(1). The purpose and character of Nivoda's use of the Price List is identical – to communicate a trusted authority's (i.e., Rapaport's) opinion of what should be the sale price for certain types of diamonds – and is therefore not transformative. *Andy*

---

[12] A Rule 12 motion may, in certain circumstances, be granted on the basis of fair use. But the contexts of those cases are different from the infringement alleged in this case. *E.g.*, *Marano v. Metro. Museum of Art*, 844 F. App'x 436, 438 (2d Cir.), *cert. denied*, 142 S. Ct. 213 (2021) (photograph used as part of a broader museum exhibit); *Brown v. Netflix, Inc.*, 855 F. App'x 61 (2d Cir. May 18, 2021) (song played in scene of film); *Lombardo v. Dr. Seuss Enterprises, L.P.*, 279 F. Supp. 3d 497 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018) (parody).

*Warhol*, 598 U.S. at 527–29. Nivoda adds nothing new, and it has no other legitimate justification for its copying; it is merely superseding the objects of Rapaport's original creations by stealing the Price List and offering Rapaport's opinion for free to Nivoda's own subscribers. Additionally, the commercial nature of Nivoda's use is relevant and favors Rapaport. *Andy Warhol*, 598 U.S. at 531.

The second fair use factor – which is "the nature of the copyrighted work" – has rarely played a significant role in the determination of a fair use dispute. *Lombardo*, 279 F. Supp. 3d at 511. Nonetheless, the second factor favors Rapaport, or is at least neutral. 17 U.S.C. § 107(2). The Price List is Rapaport's opinion and therefore should be granted thicker protection than the thinner protection afforded to factual works. *Generally*, *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 89 (2d Cir. 2014). Even if the Price List is considered more factual in nature, factual works are entitled to copyright protection. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015) ("It cannot seriously be argued that … others may freely copy and re-disseminate news reports.").

The third fair use factor – which is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" – strongly favors Rapaport. 17 U.S.C. § 107(3); *see*, *Campbell*, 510 U.S. at 586. There are no absolute rules as to how much of a copyrighted work may be copied and still be

44

considered fair use, but in assessing this factor courts should consider "the quantity of the materials used" and "their quality and importance." *TCA*, 839 F.3d at 185. Here, Rapaport alleges (and Nivoda's submissions reflect) that Nivoda is wholesale copying the entirety of the Price List. Copying the entirety of a protected work weighs against fair use, especially when there is no transformative use. *E.g.*, *Hachette*, 115 F.4th at 188 (library copied publishers' books and provided them to the public in their entirety in digital form, and such copying did not achieve a transformative secondary purpose, but instead served to create a substitute for publishers' books); *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) (defendant copied the whole of plaintiffs' sound recordings); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 431 (S.D.N.Y. 2018) (rejecting a fair use claim by a media company over the use of a photograph of Donald Trump crashing a wedding). This factor strongly favors Rapaport.

Lastly, the fourth factor – which considers "the effect of the use upon the potential market for or value of the copyrighted work" – strongly favors Rapaport. 17 U.S.C. § 107(4). This factor focuses on "whether the secondary use usurps demand for the protected work by serving as a market substitute." *TCA*, 839 F.3d at 186. The Court must take account not only of harm to the original but also of harm to the market for derivative works. *Campbell*, 510 U.S. at 590. This includes

the use's impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets. *Id.*

As alleged in Rapaport's complaint (A12-14), Nivoda's usage of the Price List competes with and supersedes with Rapaport's market to sell and license the Price List. *E.g.*, *Romanova*, 2025 WL 1479007, at *11 ("Defendant's unauthorized distribution of Plaintiff's Work diminished the value of Plaintiff's copyright by diminishing the likelihood that others would seek and pay for a license to publish the Photograph."); *Nihon Keizai*, 166 F. 3d at 73; *Capitol Recs.*, 910 F.3d at 662 ("When a secondary use competes in the rightsholder's market as an effective substitute for the original, it impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them"). As alleged in paragraphs 15 and 24 the complaint, the Price List is available from Rapaport by paid subscription only, but Nivoda provides the Price List derivatives to its own subscribers for free. A10-12. As further alleged in paragraphs 34 and 35 the complaint, Nivoda is unfairly competing with others in the diamond industry, including other trading platforms (e.g., RapNet), who subscribe to or are otherwise authorized by Rapaport to use the Price List. A14. Diamond traders may choose to not purchase from Rapaport a subscription for the Price List, or may choose to not use paid trading platforms that are authorized by Rapaport to use the Price List

(e.g., RapNet[13]), if the traders can obtain the same information for free from Nivoda. *Id.* Plainly, widespread conduct of this sort would have a substantial impact on the market for the Price List. *Campbell*, 510 U.S. at 590. The fourth factor strongly favors Rapaport.

### E. If There Were Issues With The Complaint, Rapaport Should Have Been Granted Leave To Amend

Even if Rapaport's original complaint failed to state a claim, the district court erred in dismissing the complaint with prejudice and not allowing Rapaport to serve an amended complaint. "The court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and granting leave to amend is especially appropriate when the district court has not previously weighed in on any alleged issues with the complaint. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015).

## VIII.  CONCLUSION

This Court should vacate and reverse the Judgment, Opinion and Order; remand the case to the district court for further proceedings; and tax costs against Nivoda (Fed. R. App. P. 39(a)). If, notwithstanding the foregoing, this Court should affirm the district court, then Rapaport respectfully requests that the Court explain how this case is different from *CCC* and *CDN*.

---

[13] The RapNet trading platform also displays a percentage discount in reference to the Price List.

Dated:      June 16, 2025
            New York, NY

FIRESTONE GREENBERGER PLLC
*Attorneys for Appellant-Plaintiff*
*Rapaport USA, Inc.*

__/s/ Jordan Greenberger__
Jordan Greenberger
104 West 40th Street, 4th Floor
New York, NY 10018
(212) 597-2255
jg@firegreenlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Local Rule 32.1(4) because this brief contains 11,069 words, excluding the parts of the brief exempted by F.R.A.P. 32(f).

This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated:    June 16, 2025
          New York, NY

                FIRESTONE GREENBERGER PLLC
                *Attorneys for Appellant-Plaintiff*
                *Rapaport USA, Inc.*

                __/s/ Jordan Greenberger__
                Jordan Greenberger
                104 West 40th Street, 4th Floor
                New York, NY 10018
                (212) 597-2255
                jg@firegreenlaw.com

SPECIAL APPENDIX

## **Table of Contents**

**Page**

Order of the Honorable Jed. S. Rakoff,
 dated April 10, 2025 .................................................... SPA1

Opinion and Order of the Honorable Jed S. Rakoff,
 dated May 2, 2025 ....................................................... SPA2

Judgment of the United States District Court,
 Southern District of New York, entered May 2, 2025 ............. SPA13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
RAPAPORT USA, INC.,

          Plaintiff,

     -against-

NIVODA USA LLC,

          Defendant.
```

25-cv-171 (JSR)

ORDER

JED S. RAKOFF, U.S.D.J.:

     In January 2025, plaintiff Rapaport USA, Inc. ("Rapaport") filed suit against defendants Nivoda, USA LLC ("Nivoda"), Nivoda Limited, and David Sutton, alleging that defendants infringed its copyright for "The Rapaport Price List." See ECF No. 1. A month later, Rapaport voluntarily dismissed its claims against Nivoda Limited and David Sutton without prejudice. See ECF No. 17. Nivoda has now moved to dismiss the remaining claim against it. After careful consideration, the Court grants the motion with prejudice. An Opinion explaining the reasons for this ruling will issue in due course, after which final judgment will be entered.

     SO ORDERED.

New York, NY
4/10 , 2025

JED S. RAKOFF, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAPAPORT USA, INC.,

        Plaintiff,

    -against-

NIVODA USA LLC,

        Defendant.

25-cv-171 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

    In January 2025, plaintiff Rapaport USA, Inc. ("Rapaport") filed suit against defendants Nivoda, USA LLC ("Nivoda"), Nivoda Limited, and David Sutton, alleging that they infringed its copyrights for "The Rapaport Price List." A month later, Rapaport voluntarily dismissed its claims against Nivoda Limited and David Sutton without prejudice. Nivoda has now moved to dismiss the remaining claim against it. After careful consideration, the Court grants the motion, and directs the filing of final judgment dismissing the complaint with prejudice.

    I.   Background

    The following facts are alleged in Rapaport's complaint or integral to it. Rapaport, a Nevada corporation that provides various services related to the sale of diamonds, creates and publishes "The Rapaport Price List" (the "List"), a chart that sets out "what diamonds of different sizes, colors, and clarity should sell for in the market." See ECF No. 1 ("Complaint") ¶ 2. The List is the "unique product of [Rapaport's] analysis and sophisticated expert industry opinion

derived from its extensive market research and proprietary knowledge, and from [its] decades of knowledge, investment, and industry relationships" Id. at ¶ 14; see also id. at ¶ 2. ("[The List] is the result of [Rapaport's] extensive hard work and expertise in the diamond industry."). As a result, the List serves as an "international benchmark" that is "used by dealers to establish diamond prices in all major markets." Id. To that end, the List is published in weekly editions that reflect "changes in the global diamond markets" and is distributed to paid subscribers every Thursday at 11:59 PM EST. Id. at ¶¶ 2, 15, 18.

Nivoda, a Delaware limited liability company, owns and operates an online diamond and gemstone marketplace. Id. at ¶ 21. Rapaport alleges that, since the summer of 2023, "Nivoda has been copying, publishing, distributing, creating derivatives of, and otherwise exploiting the entirety of [the List]" without authorization by "display[ing] diamond prices based upon or otherwise copied from [the List]" on its website. Id. at ¶¶ 22, 23, 25-27. Indeed, Nivoda's website displays the percentage difference between the price that Nivoda charges for particular diamonds and the international benchmark price for those diamonds, which is derived from the List.[1] For example,

---

[1] In connection with its motion to dismiss, Nivoda submitted screenshots of its website. See ECF No. 24, Exhibits 4 & 5. Although those screenshots were not attached to Rapaport's complaint, they are integral to it. After all, Rapaport's allegations are based on the contents of Nivoda's website. Moreover, Nivoda does not meaningfully dispute the authenticity or accuracy of the screenshots. Accordingly, the Court may consider them in deciding Nivoda's motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2002). Those

2

Nivoda's website indicates that Nivoda offered a particular diamond for "$1,870.72" at a "64.02%" discount. See ECF No. 24, Exhibit E, at 1. According to Rapaport, Nivoda website users can therefore access the prices on the List free of charge. Id. at ¶ 24. By thus exploiting the List, Nivoda has promoted the sale of its diamonds and thereby grown its business at the expense of Rapaport and other diamond traders that subscribe to the List.  Id. at ¶¶ 31-35.

In January 2025, Rapaport filed suit against Nivoda. The complaint also named Nivoda Limited (a related English company) and David Sutton (the co-founder and CEO of Nivoda and Nivoda Limited) as defendants. In the complaint, Rapoport alleged that Nivoda and Nivoda Limited had engaged in copyright infringement and that Sutton was vicariously liable for that infringement. Shortly thereafter, Rapaport moved to dismiss the claims against Nivoda Limited and Sutton without prejudice, which the Court granted. See ECF No. 17. Nivoda has now moved to dismiss the complaint with prejudice. See ECF No. 22.

II.  Legal Standard

On a motion to dismiss, courts must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light more favorable to plaintiff, and construe the complaint liberally."[2] Rescuecom Corp. v. Google, Inc.,

---

screenshots demonstrate that Nivoda's website publishes the percentage difference between the price that Nivoda charges for a particular diamond and the corresponding international benchmark.

[2] Unless otherwise indicated, all case quotations omit internal alterations, brackets, citations, ellipses, quotations, and quotation

562 F.3d 123, 127 (2d Cir. 2009). "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

        III. Discussion

        Nivoda raises three alternative bases for dismissal. First, Nivoda argues that Rapaport has failed to allege that it holds valid copyrights for the weekly editions of the List. Second, Nivoda argues that Rapaport has not adequately alleged that Nivoda engaged in copyright infringement. And finally, Nivoda argues that the fair use defense applies in any event. If Rapaport has not adequately alleged that Nivoda engaged in copyright infringement, then the Court need not determine whether Rapaport adequately alleged that it holds valid copyrights for the weekly editions or whether the fair use defense

_____

marks.

applies. Accordingly, the Court proceeds to consider whether Rapaport has adequately alleged that Nivoda engaged in copyright infringement.

A. Allegations of Infringement

To determine whether Rapaport has adequately alleged that Nivoda engaged in copyright infringement in this case, the Court must determine whether the "merger doctrine" applies to the List.[3]

"It has been long accepted that copyright protection does not extend to ideas; it protects only the means of expression employed by the author." CCC Info. Servs., Inc. v. Maclean Hunter Market Reports, Inc., 44 F.3d 61, 68 (2d Cir. 1994); see also 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). "Because ideas are too important to the advancement of knowledge to permit them to be under private ownership, and because open public debate, which is essential to a free democratic society, requires free access to the ideas to be debated, ideas cannot be copyrighted." N.Y. Mercantile Exchange, Inc. v. Intercontinental Exchange, Inc., 497 F.3d

---

[3] Nivoda invokes the merger doctrine to argue that the List is not copyrightable. However, the Second Circuit has made clear that "consideration of the merger doctrine takes place in light of [any] alleged copying to determine if infringement has occurred, rather than in an analyzing copyrightability of the original work." CCC Info. Servs., Inc. v. Maclean Hunter Market Reports, Inc., 44 F.3d 61, 72 n.26 (2d Cir. 1994). Accordingly, the Court assumes without deciding that the List is copyrightable and that Nivoda has copied it, and proceeds to consider the applicability of the merger doctrine.

109, 116 (2d Cir. 2007). "Instead, only the manner of an idea's expression is copyrightable." Id.

"To ensure free access to ideas, courts have applied the merger doctrine." Id. "The merger doctrine bars a copyright of even original expression when there is essentially only one way to express an idea and thus the idea and its expression are inseparable." MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 194 (2d Cir. 2004); see N.Y. Mercantile Exchange, Inc., 497 F.3d at 116-17. Under such circumstances, "[t]he expression is . . . said to merge with [an] unprotected attribute [of the work]," thereby "depriv[ing] [the work] of protection." Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 132 n.4 (2d Cir. 2003). Courts must exercise "considerable care" in applying the merger doctrine. N.Y. Mercantile Exchange, Inc., 497 F.3d at 117. After all, "if the merger doctrine is applied too readily, arguably available alternative forms of expression will be precluded; if applied too sparingly, protection will be accorded to ideas." Id.

In applying the merger doctrine, courts must first identify "the idea that might be merging with its expression." Id. Here, the idea is the market price of diamonds based on their size, color, and clarity. As noted above, the complaint alleges that the List sets the "international benchmark" for "what diamonds of different sizes, colors, and clarity should sell for in the market" and that the prices on the List are "the unique product of [Rapaport's] analysis and sophisticated expert industry opinion derived from its extensive

market research and proprietary knowledge." Complaint ¶¶ 2, 14. The complaint further alleges that "Nivoda's marketplace service displays diamond prices based upon or otherwise copied from [the List]." Id. at ¶ 23. Therefore, for purposes of determining the applicability of the merger doctrine in this case, the key question is whether there are multiple ways to express the diamond prices featured on the List.

After careful consideration, the Court concludes that there are not. The only way to express the price of a particular diamond or type of diamond is with the specific number corresponding to that price. See BanxCorp v. Costco Wholesale Corp., 978 F. Supp. 2d 280, 310 (S.D.N.Y. 2013) ("[T]he simplicity and objectivity of the computation makes one and only one number the sole possible expression."). Accordingly, the merger doctrine applies to the List and Rapaport cannot be liable for copyright infringement.

In N.Y. Mercantile Exchange, the Second Circuit confronted similar allegations and reached the same conclusion. Plaintiff NYMEX Clearing House ("NYMEX"), a financial intermediary that facilitated the exchange of futures and options contracts for energy commodities on the New York Mercantile Exchange, determined settlement prices for settlement contracts on a daily basis. The settlement prices were defined as "the value, at the end of each trading day, of a particular futures contract for a particular commodity for future delivery at a particular time." N.Y. Mercantile Exchange, 497 F.3d at 111. NYMEX later filed a suit against defendant IntercontinentalExchange, Inc. ("ICE"), alleging that ICE had infringed its copyright for the

settlement prices by copying the prices, adjusting them for its own purposes, and forwarding them to another entity.

The Second Circuit disagreed with NYMEX and sided with ICE. Assuming without deciding that the settlement prices constituted original works rather than discovered facts about the market for futures contracts, the Second Circuit reasoned that "all possible expression [took] the same form" -- that is, "a number." Id. at 118. Put differently, there was no way to express the settlement prices other than with the numbers associated with those prices. Because "grant[ing] NYMEX copyright protection" would have "effectively accord[ed] protection to the idea itself" and prevented ICE from valuing NYMEX's contracts, the Second Circuit concluded that the merger doctrine applied and declined to extend copyright protection to NYMEX's settlement prices. Id.; see also id. ("[I]n using the settlement prices, ICE took nothing more than ideas, for which the copyright law affords no protection to the author.").

Another district court in the Southern District reached a similar conclusion in BanxCorp. In that case, the district court was asked to consider the applicability of the merger doctrine to a publisher's list of national average rates of interest for various financial products. Assuming, as the Second Circuit had in N.Y. Mercantile Exchange, that those rates constituted expression rather than facts, the court emphasized that the averages were "economic indicators expressed in numerical form." Id. at 308. The "crucial point" was that the "expressive variation" of the rates was "very low, even negligible"

because "the purpose of computing and publishing a national average rate [was] to give the consumer or the customer insight into the fact of what [was] going on in a national market" -- in other words, to "create a benchmark." Id. at 310-11 (emphasis in original). Accordingly, there was no "wide variation" of possible expression. Id. at 311.

In reaching its conclusion in this case, the Court does not hold that the merger doctrine necessarily applies any time the "idea that might be merging with [the] expression," N.Y. Mercantile Exchange, Inc., 497 F.3d at 117, involves a number. The merger doctrine may well sweep that broadly, but the Court need not reach that holding to resolve this case. Here, as in N.Y. Mercantile Exchange and BanxCorp, the plaintiff alleged that its expression consisted of numbers that served to set an industry benchmark and that the defendant had infringed its copyrights by copying and using those numbers for its own purposes -- in this case, to contextualize the prices on its website. The plaintiff did not allege, for example, that the defendant distributed its own weekly price charts, which were both substantively and stylistically identical to Rapaport's weekly editions of the List. Assuming without deciding that Rapaport holds valid copyrights for the weekly editions of the List and that Nivoda copied those editions, the Court therefore applies the merger doctrine and concludes that Rapaport has not adequately alleged that Nivoda engaged in copyright infringement.

B. Leave to Amend

Having determined that Rapaport has failed to adequately allege copyright infringement as necessary to survive Nivoda's motion to dismiss, the Court proceeds to consider whether it would be appropriate to grant Rapaport leave to amend.

"Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a court should freely give leave to amend the complaint when justice so requires." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 71 (2d Cir. 2012) (discussing Federal Rule of Civil Procedure 15(a)(2)). However, "[m]otions to amend should generally be denied in instances of futility." McCraken v. Verisma Sys. Inc., 91 F.4th 600, 610 (2d Cir. 2024). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies." Rukoro v. Fed. Rep. of Germany, 976 F.3d 218, 228 (2d Cir. 2020).

The Court declines to grant leave to amend in this case. At bottom, Rapaport alleges that Nivoda engaged in copyright infringement by copying the prices on the List, which serves as a benchmark for diamond prices worldwide. However, as discussed above, pursuant to the merger doctrine, such copying cannot give rise to copyright infringement under the merger doctrine. Under these circumstances, amendment would be futile, so the Court does not grant leave to amend.[4]

---

[4] It should be noted that Rapaport has already filed a purported notice of appeal. On April 10, 2025, this Court issued an Order, which stated that Nivoda's motion was granted with prejudice, but that "[a]n Opinion explaining the reasons for [that] ruling [would] issue in due course, after which final judgment [would] be entered." See ECF No. 32. Two weeks later, before the Court issued this Opinion, and therefore before

IV.  Conclusion

For the foregoing reasons, the Court grants Nivoda's motion to dismiss with prejudice. The Clerk of Court is respectfully directed to enter final judgment dismissing the complaint with prejudice, and to close the case.

SO ORDERED.

New York, NY

5/2, 2025                                    JED S. RAKOFF, U.S.D.J.

---

final judgment was entered, Rapaport filed a purported notice of appeal. See ECF No. 33.

11

# SPA13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
RAPAPORT USA, INC.,

                              Plaintiff,

           -against-                                25 **CIVIL** 0171 (JSR)

                                                     <u>**JUDGMENT**</u>

NIVODA USA LLC,

                            Defendant.

-----------------------------------------------------------------X

       It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Order dated May 2, 2025, the Court grants Nivoda's motion to dismiss with prejudice; accordingly, the case is closed.

**Dated:** New York, New York

      May 2, 2025

                                               **TAMMI M HELLWIG**
                                   _____
                                      **Clerk of Court**

           **BY:**              _____
                                      **Deputy Clerk**