# 25-1065-cv(L)
## 25-1195-cv(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

RAPAPORT USA, INC.,

*Plaintiff-Appellant,*

*v.*

NIVODA USA LLC,

*Defendant-Appellee,*

NIVODA LIMITED, DAVID SUTTON,

*Defendants.*

---

*On Appeal from the United States District Court
for the Southern District of New York*

---

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

---

Jordan Greenberger
FIRESTONE GREENBERGER PLLC
*Attorneys for Plaintiff-Appellant*
104 West 40th Street, 4th Floor
New York, New York 10018
212-597-2255



# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................... iii

I. PRELIMINARY STATEMENT ........................................................1

II. THE COMPLAINT SHOULD NOT HAVE BEEN DISMISSED
WITH PREJUDICE ON THE BASIS OF THE MERGER
DOCTRINE ........................................................................4

   A. The Merger Doctrine Should Not Have Been Dispositively
      Applied At The Pleadings Stage ......................................4

   B. CDN and CCC Are On-Point; Not N.Y. Mercantile and
      BanxCorp II ........................................................8

      1. The Idea Of The Price List Is Rapaport's Pricing Opinion..................9

      2. Because The Idea Is Rapaport's Opinion, The Range Of
         Possible Expression Is Infinite ......................................14

      3. Policy Consideration Weigh Against Applying The
         Merger Doctrine ..................................................18

III. NIVODA'S NON-MERGER ARGUMENTS DO NOT
SUPPORT A DISMISSAL OF THE COMPLAINT WITH
PREJUDICE ........................................................................19

      A. The Numbers In The Price List Are Not Unprotectible
         Facts ..............................................................20

      B. Rapaport Has Alleged, And Expects To Easily Prove,
         Actionable Infringement ............................................22

      C. Rapaport Has Obtained And Pleaded Copyright
         Registrations ......................................................26

      D. Fair Use Is Not A Viable Defense..................................29

IV. CONCLUSION ...................................................................................30

CERTIFICATE OF COMPLIANCE ......................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
    802 F. Supp. 1 (S.D.N.Y. 1992) ..........................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009)...............................................................12

*BanxCorp v. Costco Wholesale Corp.*,
    723 F. Supp. 2d 596 (S.D.N.Y. 2010) .........................................................3, 5, 6

*BanxCorp v. Costco Wholesale Corp.*,
    978 F. Supp. 2d 280 (S.D.N.Y. 2013) ........................................................*passim*

*Bartz v. Anthropic PBC*,
    No. C 24-05417 WHA, 2025 WL 1741691
    (N.D. Cal. June 23, 2025) .................................................................................25

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955 (2007)...............................................................12

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*,
    44 F.3d 61 (2d Cir. 1994) ...........................................................................*passim*

*CDN Inc. v. Kapes*,
    197 F.3d 1256 (9th Cir. 1999) ....................................................................*passim*

*Coscarelli v. ESquared Hosp. LLC*,
    No. 18-CV-5943 (JMF), 2021 WL 5507034
    (S.D.N.Y. Nov. 24, 2021) .................................................................................28

*Dolby Laboratories Licensing Corp. v. Roku, Inc.*,
    No. 24-CV-04660-EJD, 2025 WL 2021803
    (N.D. Cal. July 18, 2025)..................................................................................28

*Elektra Ent. Grp., Inc. v. Barker*,
    551 F. Supp. 2d 234 (S.D.N.Y. 2008) ...............................................................22

*Erickson v. Pardus*,
   551 U.S. 89, 127 S. Ct. 2197 (2007)....................................................22

*Exxon Mobil Corp. v. Healey*,
   28 F.4th 383 (2d Cir. 2022) ................................................................27

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 111 S. Ct. 1282 (1991).................................................15

*Gayle v. Larko*,
   2019 WL 4450551 (S.D.N.Y. Sept. 17, 2019) ...................................23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258, 134 S. Ct. 2398 (2014).................................................27

*Hart v. Dan Chase Taxidermy Supply Co.*,
   86 F.3d 320 (2d Cir. 1996) ......................................................2, 3, 4, 5

*Kadrey v. Meta Platforms, Inc.*,
   No. 23-CV-03417-VC, 2025 WL 1752484
   (N.D. Cal. June 25, 2025) ...................................................................25

*Kregos v. Associated Press*,
   937 F.2d 700 (2d Cir. 1991) .......................................................*passim*

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   23 F. Supp. 3d 344 (S.D.N.Y. 2014) ..................................................22

*Lennon v. Seaman*,
   2002 WL 109525 (S.D.N.Y. Jan. 28, 2002) .......................................23

*Lombardo v. Dr. Seuss Enters., L.P.*,
   279 F. Supp. 3d 497 (S.D.N.Y. 2017),
   *aff'd*, 729 F. App'x 131 (2d Cir. 2018).............................................11

*Lucente v. Int'l Bus. Machines Corp.*,
   310 F.3d 243 (2d Cir. 2002) .......................................................8, 9, 22

*Lynch v. City of New York*,
   952 F.3d 67 (2d Cir. 2020) ...........................................................8, 12

*Marvullo v. Gruner & Jahr*,
   105 F. Supp. 2d 225 (S.D.N.Y. 2000) ................................................23

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
  312 F.3d 94 (2d Cir. 2002) ...................................................................9

*Miracle Blade, LLC. v. Ebrands Com. Grp., LLC.*,
  207 F. Supp. 2d 1136 (D. Nev. 2002).................................................21

*Moll v. Telesector Res. Grp., Inc.*,
  94 F.4th 218 (2d Cir. 2024) .................................................................8

*Morris v. Bus. Concepts, Inc.*,
  259 F.3d 65 (2d Cir. 2001),
  *as clarified on denial of reh'g*, 283 F.3d 502 (2d Cir. 2002).........................26, 27

*MyWebGrocer, LLC v. Hometown Info, Inc.*,
  375 F.3d 190 (2d Cir. 2004) ...............................................................9

*New York, by James v. Niagara-Wheatfield Cent. Sch. Dist.*,
  119 F.4th 270 (2d Cir. 2024) ............................................................19

*New York Mercantile Exch., Inc. v. Intercontinental
  Exchange, Inc.*,
  497 F.3d 109 (2d Cir. 2007) ......................................................*passim*

*Project Dev. Grp., Inc. v. O.H. Materials Corp.*,
  766 F. Supp. 1348 (W.D. Pa. 1991),
  *aff'd*, 993 F.2d 225 (3d Cir. 1993)....................................................21

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010)............................................................................26

*Richardson v. Commerce Media Holdings*,
  2025 WL 919670 (S.D.N.Y. Mar. 26, 2025)......................................23

*Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*,
  931 F.3d 215 (3d Cir. 2019) ................................................................9

*Singleton v. Wulff*,
  428 U.S. 106, 96 S. Ct. 2868 (1976)..................................................27

*Slayton v. Am. Exp. Co.*,
  460 F.3d 215 (2d Cir. 2006) ................................................................8

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) ................................................................18

*United States v. Botti*,
    711 F.3d 299 (2d Cir. 2013) ...............................................................29

*Windward Bora LLC v. Sotomayor*,
    113 F.4th 236 (2d Cir. 2024) ..............................................................27

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001) ...............................................................10

**Statutes**

17 U.S.C. § 106 ............................................................................25, 26

17 U.S.C. § 107 ....................................................................................29

17 U.S.C. § 411 ........................................................................26, 27, 28

**Rules**

Fed. R. App. P. Rule 39(a) ...................................................................30

Fed. R. Civ. P. Rule 8 ..........................................................................22

Fed. R. Civ. P. Rule 12 .................................................................*passim*

Fed. R. Civ. P. Rule 15(a) ......................................................................7

**Other Authorities**

U.S. Copyright Office, Compendium of U.S. Copyright Office
    Practices § 613.7 (3d ed. 2021) .........................................................22

## I.   PRELIMINARY STATEMENT

The district court dismissed Rapaport's complaint against Nivoda because of copyright law's merger doctrine, which provides that copyright protection does not protect ideas that can be expressed in essentially only one way.  The central issues raised by this appeal are: (1) whether the merger doctrine could be dispositively applied on a Rule 12(b)(6) motion rather than at summary judgment or trial; and (2) at whatever procedural posture, which line of cases provides the controlling framework for determining whether the merger doctrine applies.  A careful reading of *CCC*, *CDN*, *BanxCorp II* and *N.Y. Mercantile*[1] confirms that: (1) it was premature for the district court to dispositively apply the merger doctrine on a Rule 12(b)(6) motion; and (2) that *CCC* and *CDN*, rather than *N.Y. Mercantile* and *BanxCorp II*, provide the controlling framework because those cases concerned pricing opinions of hypothetical items expressed as numbers.

Nivoda is fixated on Rapaport's characterization of the Price List in the complaint as "the benchmark" upon which diamond traders might base their negotiations.  But Rapaport's description of the Price List as "the benchmark" is not dispositive and does not tilt the balance in favor of applying *N.Y. Mercantile*

---

[1]     *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280 (S.D.N.Y. 2013) ("*BanxCorp II*"); *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*, 44 F.3d 61 (2d Cir. 1994) ("*CCC*"); *CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999) ("*CDN*"); and *New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc*., 497 F.3d 109 (2d Cir. 2007) ("*N.Y. Mercantile*").

and *BanxCorp II*, cases which also used the phrase "benchmark." The "benchmark" in those cases had different meanings and contexts because the cases involved real world facts (the closing price of commodity futures and the average interest rate for certain financial products) rather than pricing opinions. The Price List does not report real world facts; it is an expression of Rapaport's opinion. Therefore, the district court made a reversible error in dismissing Rapaport's original complaint with prejudice on the basis of the merger doctrine. The merger doctrine does not preclude Rapaport's copyright infringement claims at all, and certainly not on a Rule 12(b)(6) motion.

Even if this Court agrees with Nivoda and the district court that *N.Y. Mercantile* and *BanxCorp II* provide the controlling framework on the merger doctrine, then the district court still should be reversed because it was premature to apply those cases at the pleadings stage on a Rule 12(b)(6) motion. Both of those cases were decided on summary judgment, where the parties (following discovery) presented evidence related to the merger doctrine.

This Court has already explained that determining whether the merger doctrine applies requires "considerable care" (*Kregos*) and that there is a "strong preference" (*Hart*) to await determining the issue until evidence is presented

concerning the range of possible expression.[2]  It was reversible error for the district court to dispositively apply the merger doctrine to Rapaport's original complaint on Nivoda's Rule 12(b)(6) motion, before the parties were given an opportunity to explore the merger doctrine in discovery.

Nivoda's own line of cases supports Rapaport's position that it was error to dismiss Rapaport's complaint on the merger doctrine.  The district court in the *BanxCorp* case, while ultimately granting summary judgment on the basis of the merger doctrine, had recognized in an earlier decision deciding a Rule 12(b)(6) motion that merger could not be decided at the pleadings stage.  *See*, *BanxCorp I*.[3]

Neither Nivoda nor the district court cite a single case where the merger doctrine was dispositively applied on a Rule 12(b)(6) motion.  Therefore, even to the extent that the Court concludes that the merger doctrine might ultimately bar Rapaport's claim, it is premature to decide that now solely on Rapaport's complaint.

---

[2]  *Hart v. Dan Chase Taxidermy Supply Co.*, 86 F.3d 320, 322 (2d Cir. 1996) ("*Hart*"); *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991) ("*Kregos*").

[3]  *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 608 (S.D.N.Y. 2010) ("*BanxCorp I*") ("Plaintiffs will, no doubt, have to confront this issue during discovery and at summary judgment, but the Court cannot say that as a matter of law it is implausible that the BanxQuote Indices are sufficiently subjective that a wide range of potential final values would be possible.")

Lastly, Nivoda's non-merger arguments were not addressed by the district court and therefore this Court need not pass upon them on appeal. But to the extent that Nivoda's non-merger arguments are considered by this Court under a *de novo* review, Rapaport further addresses those arguments below. None of the arguments provide a basis to support the dismissal of Rapaport's original complaint with prejudice and without leave to amend.

## II. THE COMPLAINT SHOULD NOT HAVE BEEN DISMISSED WITH PREJUDICE ON THE BASIS OF THE MERGER DOCTRINE

### A. The Merger Doctrine Should Not Have Been Dispositively Applied At The Pleadings Stage

It was reversible error for the district court to dispositively apply the merger doctrine to Rapaport's original complaint on a Rule 12(b)(6) motion. "Determining when the idea and its expression have merged is a task requiring considerable care." *Kregos*, 937 F.2d at 705. This Court's "strong preference" is that the merger question be decided only after receiving evidence whether all possible expressions are so substantially similar that granting the copyright would bar others from expressing the underlying idea. *Hart*, 86 F.3d at 322; *see also*, *N.Y. Mercantile*, 497 F.3d at 117. "A court will normally have a 'more detailed and realistic basis' for evaluating the identity between idea and expression if it has all the contested forms of expression before it." *Hart*, 86 F.3d at 322 (quoting *Kregos*, 937 F.2d at 705).

It is therefore not surprising that Nivoda has not cited a single case where the merger doctrine was the basis of dismissing a complaint on a Rule 12(b)(6) motion. Nor did the district court cite a single case where the merger doctrine was the basis for dismissing a complaint on a Rule 12(b)(6) motion.

The district court erred in not withholding a decision on the merger doctrine until summary judgment or trial, especially given the "considerable care" (*Kregos*) required in determining the issue and the Court's "strong preference" (*Hart*) for evidence on the issue. This is not the "highly unusual" case where merger can be applied to bar Rapaport's claim simply by reviewing the Price List itself. *Hart*, 86 F.3d at 322.

The need for discovery and evidentiary submissions, rather than determination on the pleadings, is confirmed by the line of cases cited by the district court and upon which Nivoda relies. Both *N.Y. Mercantile* and *BanxCorp II* were decided on summary judgment, after the plaintiffs had been given an opportunity, following discovery, to demonstrate whether there were multiple ways to express the idea.

Even in the *BanxCorp* case, the court had earlier denied a Rule 12 motion where the defendant had argued the merger doctrine applied; the *BanxCorp I* court found that it "cannot say that as a matter of law it is implausible that the BanxQuote Indices are sufficiently subjective that a wide range of potential final

values would be possible" and instead concluded that the plaintiff would have to confront the merger issue during discovery and at summary judgment. *BanxCorp I*, 723 F. Supp. 2d at 608. The *BanxCorp I* decision determined that it was not appropriate to address the merger issue in the context of a motion to dismiss, because the nature of the inquiry "argues in favor of allowing parties to present evidence on this issue." *Id*. The *BanxCorp* court waited to decide the merger issue until "the evidence [was] in" on cross-motions for summary judgment. *BanxCorp II*, 978 F. Supp. 2d at 286.

It was reversible error for Rapaport to not be given that opportunity, and to hold Rapaport only to the allegations in its original complaint without even an opportunity to amend its allegations. Even if the merger doctrine might eventually apply (which Rapaport does not concede), Rapaport at a minimum should have been given the opportunity to amend its complaint to provide further details about its pricing opinions and the range of numbers it could select (which, as explained below and in Rapaport's opening brief, are infinite).

Nivoda focuses on Rapaport's allegation in paragraph 2 of the complaint that the Price List is "the international benchmark used by dealers to establish diamond prices in all the major markets." A8. According to Nivoda, because Rapaport characterized the Price List as "the international benchmark," and both *N.Y.*

*Mercantile* and *BanxCorp II* make references to a "benchmark," then Rapaport has pleaded itself out of court. Not so.

Rapaport was never given the opportunity to amend its complaint and to the extent this Court deems it necessary Rapaport can amend its complaint. Courts should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a). For example, if deemed necessary Rapaport could amend its complaint to:

- Describe the Price List as *a* benchmark rather than *the* benchmark.

- Explain how Rapaport's usage of the phrase "benchmark" is different from the "benchmarks" at issue in *N.Y. Mercantile* and *BanxCorp*. In *BanxCorp*, the numbers at issue were described as a "benchmark" because they were merely the national average bank rate calculated from a basic mathematical formula; in *N.Y. Mercantile*, the fleeting reference to the numbers as "benchmarks" appears in a sentence that also emphasized that the numbers were "real-world facts" and the "actual price at which a futures contract must be settled" (497 F.3d at 112-113).

- Remove the reference to "benchmark" altogether, which would not alter the fundamental nature of Rapaport's copyright infringement claim.

With any such amendments, the allegation in the original complaint that the Price List is "the benchmark" would not be dispositive. "An allegation made only in a pleading that has been withdrawn or superseded is not a judicial admission…"

*Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 250 (2d Cir. 2024); *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002).[4] Nor would any such amendments be futile. *Generally*, *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).")

Or, on remand the case can proceed on the original complaint and then have issues relating to the merger doctrine explored during discovery and then decided at summary judgment. Which is what happened in the cases upon which both the district court and Nivoda rely – merger was decided following discovery, at summary judgment, rather than on a Rule 12(b)(6) motion.

## B. *CDN* and *CCC* Are On-Point; Not *N.Y. Mercantile* and *BanxCorp II*

At whatever juncture merger is decided, *CDN* and *CCC* provide the applicable framework for considering copyright protection of the Price List, not *N.Y. Mercantile* and *BanxCorp II*. In *CDN* and *CCC*, pricing opinions were wholesale copied, and the merger doctrine did not apply even though those opinions were expressed as numbers.

The parties agree that the merger doctrine bars copyright protection of even original expression when there is essentially only one way to express an idea and

---

[4] Overruled on other grounds by *Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006).

thus the idea and its expression are inseparable. *Generally*, *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 194 (2d Cir. 2004).

The parties also agree that courts should employ a two-step analysis in determining whether the merger doctrine applies. First, identify the idea that might be merging with its expression. *N.Y. Mercantile*, 497 F.3d at 117. Second, look at the range of possible expressions and consider whether all possible expressions are so substantially similar that granting the copyright would bar others from expressing the underlying idea. *Id*.; *also*, *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 223 (3d Cir. 2019) ("Rasta's banana costume would not effectively monopolize the underlying idea because there are many other ways to make a costume resemble a banana."); *accord*, *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 99 (2d Cir. 2002) ("the art of translation involves choices among many possible means of expressing ideas, and in that sense the merger argument is inapposite to the context presented here"). Although the parties agree on the standard for analyzing the merger doctrine, they diverge in their application.

1. The Idea Of The Price List Is Rapaport's Pricing Opinion

The district court described the idea of the Price List as "the market price of diamonds based on their size, color, and clarity." SPA7. That is incorrect, and

unsupported by the record, because the Price List does not report the "market price" of diamonds.

The Price List is not like the business section of a newspaper publishing, e.g., the previous day's closing price for various publicly traded stocks, the closing price of commodity futures contracts (*N.Y. Mercantile*), or the national average interest rate for five-year certificates of deposit (*BanxCorp II*).  The Price List does not publish market facts, and having adopted the incorrect "idea" the district court went down the wrong path in its analysis of the second factor (the range of possible expression).  SPA7-10.

Nivoda defines the idea differently from the district court.  On appeal, Nivoda asserts that the idea of the Price List "is to provide a standardized reference point for the value of a product based on certain pre-determined criteria."  Brief For Defendant-Appellee ("Nivoda Br."), 15.

But that also is incorrect and unsupported by the record.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) ("PAJ's assertion is simply wrong. Yurman's position on the copyright claims is that its designs, which express original combinations of unprotectable elements, were infringed by four very similar-looking PAJ designs; Yurman's copyright claims do not seek protection for the idea of combining twisted cable and gemstones.")

Rapaport is not seeking to protect the idea of a benchmark for the diamond trade. Nor does Rapaport have any such monopoly, as confirmed by the various third party price lists that exist in the industry.

Nivoda's definition of the idea conflates the "idea" expressed by the Price List with how third parties "utilize" the Price List. Third parties in the diamond industry might use Rapaport's Price List (or any third party's price list) as a "reference point," a/k/a "benchmark;" but that is not the idea that Rapaport expresses in the Price List.

The focus should be on the idea expressed in the Price List itself, rather than how third party consumers might use that expression once it is published. In *CCC* and *CDN*, consumers used published works as benchmarks upon which to negotiate the sales price of used cars and collector coins, but the idea of those price lists was to express the editor's pricing projections for used cars and collector coins. How consumers utilize a work is different from the idea of a work. Another example: countless parents have used Dr. Seuss' books to teach their children how to read; but the idea expressed in Dr. Seuss' well-known book *How The Grinch Stole Christmas!* is quite different from the idea of teaching literacy to children. *See*, *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 502 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018) (describing the content of *How The Grinch Stole Christmas!*).

Like the editor's pricing projections for used cars in *CCC*, the idea expressed in the Price List is Rapaport's *opinion* of the price of *hypothetical* diamonds. The Price List does not express either "the value of a product" (Nivoda) or "the market price of diamonds" (the district court) because the Price List does not report the actual sales price or value of any real-world diamond and there is nothing in the record to suggest otherwise. Rapaport is merely expressing its opinion about hypothetical diamonds. This is analogous to the publisher's pricing predictions in *CCC*, which were "not historical market prices, quotations, or averages; nor [were] they derived by mathematical formulas from available statistic." 44 F.3d at 63. Rapaport's opinions expressed in the Price List are "matters of taste and personal opinion" (*Kregos*), and therefore the merger doctrine does not apply.

The record supports Rapaport's description of the idea. In the complaint, Rapaport alleged that, "The Rapaport Price List is Rapaport USA's opinion as to what diamonds … should sell for in the market…" and that "The Rapaport Price List provides Rapaport USA's opinion as to the market value of any diamond based on size, color, and clarity." A8, 10. On a Rule 12(b)(6) motion, under *Iqbal* and *Twombly*, that well-pleaded and plausible allegation should be accepted as true.[5] *Generally*, *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).

---

[5]     *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) ("*Iqbal*"); and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ("*Twombly*").

12

Additionally, on the face of the Price List (which Rapaport agrees the Court may consider on a Rule 12 motion), Rapaport prints: "Prices in this report reflect our opinion of NEW YORK HIGH CASH ASKING PRICES;" "APPROXIMATE HIGH CASH ASKING PRICE INDICATIONS;" and that Rapaport "welcomes price information and comments."  A25-26, 189-90, 334-35, 368-69, 382-83, 408-09, 434-35, 448-49, 463-64, 477-78, 492-93, 507-08, 521-22.

Similarly, the guide accompanying the Price List in the deposit-copy magazines explains that the Price List "quotes Rapaport opinion of high cash asking prices" based upon certain specifications for natural diamonds (the Rapaport Diamond Specification A3, which is based on approximately 15 different assumptions about a hypothetical stone and detailed in a separate boxed area printed within the guide), that it is common for the diamond trade to transact at discounts to the list, and that the list does not provide transaction prices but only guidelines that buyers/sellers might use as a starting point for negotiations and estimating values.  A331, A355, A365, A379, A395, A405, A421, A431, A445, A460, A474, A489, A504, A518.  *Compare* the introductory text in *CCC*'s Red Book: "You, the subscriber, must be the final judge of the actual value of a particular vehicle.  Any guidebook is a supplement to and not a substitute for expertise in the complex field of used vehicle valuation."  44 F.3d at 63-64.

13

When the idea of the Price List is accurately viewed as Rapaport's pricing opinion, it is apparent that *CDN* and *CCC* provide the applicable framework. Both of those cases involved pricing opinions for hypothetical items, and the merger doctrine was found to not apply in circumstances analogous to Rapaport's allegations of wholesale copying of those pricing opinions.

Lastly, Nivoda argues that there is no blanket rule under *Kregos* that "matters of taste and personal opinion" escape the merger doctrine. Nivoda Br., 20-21. But Nivoda does not cite any case where the merger doctrine was applied to a publisher's opinion; and that is not surprising because in *CCC* this Court further discussed *Kregos* and explained that ideas of the "suggestion-opinion category" fall outside the merger doctrine. 44 F.3d at 71-73. The price indications in the Price List are of the suggestion-opinion category discussed in *CCC* and *Kregos*, and therefore the merger doctrine does not apply.

2. Because The Idea Is Rapaport's Opinion, The Range Of Possible Expression Is Infinite

The district court concluded that "[t]he only way to express the price of a particular diamond or type of diamond is with the specific number corresponding to that price." SPA8. But that conclusion was based upon the fundamental misunderstanding of the "idea" of the Price List as "the market price of diamonds" (*supra*). If the Price List reported that specific real-world diamond "X" sold for

14

price "$Y" then yes, there would only be one way to express that sales price (as "$Y").

But as explained above and in Rapaport's opening brief, the Price List does not report the sales price of any specific real-world diamond; it expresses Rapaport's *opinion* of what hypothetical diamonds of certain specifications should sell for, recognizing that the trade might negotiate different prices based on actual market conditions and the specific stones actually being traded. Rapaport is not like the hypothetical census taker discussed in *Feist*, copying population figures from the world around them.[6] Rapaport is not like the claimant in *N.Y. Mercantile*, who reported the market valuation of futures contracts. Rapaport is not like the claimant in *BanxCorp II*, who published the results of a straight-forward mathematical calculation. Rapaport is the author of original pricing opinions.

It is not dispositive that that Rapaport expresses its opinion as a number. In both *CDN* and *CCC*, pricing opinions of hypothetical items (collector coins and used cars) were expressed as a number, and the courts in those cases did not use the merger doctrine to bar the copyright owner from pursuing infringement claims against an infringer who wholesale copied the entirety of those numbers to unfairly compete with the copyright owner. The gravamen of Rapaport's infringement

---

[6] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347, 111 S. Ct. 1282 (1991) ("*Feist*").

claim against Nivoda is that Nivoda is wholesale copying the entirety of the Price List information, and in doing so usurping Rapaport's subscription and licensing market.  It is no different than in *CDN* and *CCC*.

*N.Y. Mercantile* also confirms that expressing an idea as a number is not dispositive.  497 F.3d at 118 ("It is undisputed that all possible expression takes the same form, a number.  The question then becomes the possible range of that number."). Instead, what matters is "the possible range of that number."  *Id.*

Nivoda's argument that there is "remarkably little variation in Rapaport prices" is a red herring and an argument that was not previously raised in the district court.  Nivoda Br., 18.  The argument also (i) ignores the multi-week gaps between the examples it provides; and (ii) unfairly minimizes Rapaport's disclosures on the face of the Price List that "Price changes are in Bold, higher prices underlined, lower prices in italics."  *Id.*, n3 (record citations).

If anything, the argument supports reversal of the district court so that merger can be explored at discovery.  In discovery Rapaport would be able to demonstrate that it does change its pricing opinions from time to time, and communicates those changes to its subscribers, including without limitation during the pendency of (a) the district court proceedings, when Rapaport reduced its pricing opinion in some categories; and (b) this appeal, when Rapaport reduced its

pricing opinions by 6% some categories and increased its pricing opinion in some other categories.

In any event, whether or not Rapaport updates any given pricing opinion on a weekly basis is not dispositive on the second prong of the merger analysis. The focus is *the range* of possible expression, not where Rapaport's expression falls within that range during any given week.

And because the Price List expresses Rapaport's opinion, the range of possible expression is, literally, infinite. Rapaport might choose in any given week to change or not change its opinion, but the *range* of Rapaport's options for expressing its opinion could be $0.01, to $100, to $1 million and beyond for any category of diamonds. Rapaport likewise could change how it groups together different categories of hypothetical diamonds; it could group the weights, visibility classes, or color classes differently etc.

The diamond industry's respect for Rapaport's opinion and the level of changes in Rapaport's opinion during any given period of time does not change that there is an infinite range of numbers that Rapaport could select from to express the idea of its pricing opinions. By contrast, in *N.Y. Mercantile* "any dissension would be exceptionally narrow" given the factual nature of the information being published. 497 F.3d at 118.

17

The number Rapaport selects for its opinion could be *any number*, just like the industry-respected numbers that were selected by the publishers in *CDN* and *CCC* for collector coins and used cars could be *any number*. In both *CDN* and *CCC*, pricing opinions were expressed as numbers and the merger doctrine did not bar the copyright owner from pursuing a claim against an infringer who wholesale copied and exploited those numbers, which were highly respected in the relevant industry (and therefore copied wholesale by the infringers). *CDN* and *CCC* are the proper framework for considering this case because they too concerned pricing opinions for hypothetical items (collector coins and used cars) expressed as a number, and the courts held that the merger doctrine did not apply.

If, however, this Court concludes that the idea of the Price List is uncertain, or that the range of possible expressions is uncertain, then any such uncertainty favors reversing the district court so that merger can be further explored following discovery. Fact-specific issues should not be resolved on a Rule 12(b)(6) motion. *Generally*, *Todd v. Exxon Corp.*, 275 F.3d 191, 199-206 (2d Cir. 2001).

### 3. Policy Consideration Weigh Against Applying The Merger Doctrine

Lastly, "policy considerations weigh heavily in determining the appropriate application of the merger doctrine." *N.Y. Mercantile*, 497 F.3d at 118. Copyright law is designed to promote the advancement of knowledge by giving authors economic incentives to create works. *Id.* (quoting *CCC*). In *N.Y. Mercantile*, the

claimant had no such incentives because (i) settlement prices were a requirement for a functioning commodities market; and (ii) the claimant was required by law to record settlement prices. Here, by contrast, the diamond market can function without Rapaport's Price List and Rapaport is not required by law to create the Price List.

Applying the merger doctrine disincentivizes Rapaport from laboring to create the Price List. This case is analogous to *CCC*, where the takings were from "virtually the entire compendium," the copied valuations were "not ideas of the first, building-block, category described in *Kregos*, but [were] rather in the category of approximative statements of opinion by the … editor" and therefore policy considerations weighed against application of the merger doctrine to the ideas that were of the "weaker, suggestion-opinion category." 44 F.3d at 72.

## III.  NIVODA'S NON-MERGER ARGUMENTS DO NOT SUPPORT A DISMISSAL OF THE COMPLAINT WITH PREJUDICE

The district court's decision was solely based upon the merger doctrine, not any of the other arguments that Nivoda made at the district court or in its appellate brief. This Court's usual practice is to allow the district court to address, in the first instance, those arguments upon which the district court did not rely. *New York, by James v. Niagara-Wheatfield Cent. Sch. Dist.*, 119 F.4th 270, 284 (2d Cir. 2024). If this Court agrees with Rapaport on the merger doctrine issue, then per this Court's usual practice the Court need not address Nivoda's non-merger

arguments. *Id.* Nonetheless, the standard of review is *de novo* and therefore Rapaport briefly further addresses Nivoda's non-merger doctrine arguments.

## A. The Numbers In The Price List Are Not Unprotectible Facts

Nivoda's argument that numbers in the Price List are facts and therefore not protected by copyright law is both manifestly incorrect and contrary to the allegations in Rapaport's complaint, which must be accepted as true on a Rule 12(b)(6) motion. The Price List does not report the market price of any actual diamond, which would be a fact. Nor does the Price List "set" prices in the industry; Rapaport's opinion is highly respected in the diamond trade, but the Price List is not a royal decree of the sales price for diamonds. Instead, similar to the pricing opinions in *CCC* and *CDN* for collector coins and used cars, the Price List expresses Rapaport's *opinion* as to what should be the price for different categories of hypothetical diamonds. Opinions are not facts, even if that opinion is highly respected in the diamond industry and therefore frequently used as a benchmark upon which buyers and sellers might base their negotiations.

Case law does not support Nivoda. Contrary to Nivoda's argument, *CCC* does not merely stand for the proposition that a wholesale taking of a *compilation* of opinion-based predicted prices may be copyright infringement. Nivoda Br., 37. *CCC*'s primary proposition is that copyright law protects an author's published opinions as to what the price should be for a hypothetical object, based upon

20

professional judgment and industry expertise. Nor does *N.Y. Mercantile* help Nivoda on this point, because the section upon which Nivoda relies to argue that the prices are unprotectible facts is mere dicta. The *NY Mercantile* court explicitly decided the case on alternative grounds. 497 F.3d at 115.

The other cases that Nivoda cites in support of the "bedrock principle…that individual prices…are facts incapable of protection" are easily distinguishable. Nivoda Br., 32. Those cases were decided at different procedural postures, and concerned the actual offered price of items, not the plaintiff's opinions of what the prices should be. *Miracle Blade, LLC. v. Ebrands Com. Grp., LLC.*, 207 F. Supp. 2d 1136, 1150-51 (D. Nev. 2002) (actual price that plaintiff sold its kitchen knives in infomercial was copied in defendant's infomercial for competing products; motion for a preliminary injunction denied for various reasons); *Project Dev. Grp., Inc. v. O.H. Materials Corp.*, 766 F. Supp. 1348, 1353-54 (W.D. Pa. 1991), *aff'd*, 993 F.2d 225 (3d Cir. 1993) (summary judgment dismissing copyright claim; work copied was the plaintiff's bid proposal for certain environmental clean-up work, and court held, among other things, that cost schedule containing plaintiff's actual prices was not copyrightable).

Nivoda also cites the Copyright Office's compendium of examination practices, which gives an easily distinguishable example of "a database that contains the closing price for securities that are traded on various exchanges," and

21

states that in that hypothetical scenario the applicant for registration cannot be named as the author of those actual closing prices because they are facts not subject to copyright protection. U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 613.7 (3d ed. 2021). But again, the Price List does not state actual sales prices for specific diamonds; they state Rapaport's opinion as to what certain hypothetical diamonds should sell for.

### B. Rapaport Has Alleged, And Expects To Easily Prove, Actionable Infringement

Nivoda argues that Rapaport has not alleged, and cannot allege, actionable infringement of the Price List. But Rapaport's allegations that Nivoda has committed copyright infringement should be accepted as true on a Rule 12(b)(6) motion, and Rapaport expects to be able to easily prove such infringement.

Focusing on the complaint, Rapaport has sufficiently alleged copyright infringement under the notice pleading requirements of Fed. R. Civ. P. 8. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.") (Internal cit. and quo. om.); *generally*, *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 353-54 (S.D.N.Y. 2014) (infringement complaint satisfied Rule 8); *Elektra Ent. Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 238-39 (S.D.N.Y. 2008) (same).

Rapaport's complaint pleaded the specific original works that are the subject of the claim, that Rapaport owns the copyright in the works, that the works are covered by copyright registrations, and by what acts during what time the defendant infringed the copyright. A8-17. Nivoda's argument that the complaint does not specify any specific price-opinion or weekly Price List that has been infringed ignores the reality of Rapaport's allegations. Rapaport alleges that Nivoda is wholesale copying the *entirety* of Rapaport's pricing opinions.

Nivoda cites various cases where courts found that broad, sweeping allegations of infringement were insufficient. Nivoda Br., 43-44. Rapaport's complaint provides more details than those cases, but even if the Court concludes that Rapaport's allegations are not sufficiently pleaded, then Rapaport should have been given leave to amend. The cases upon which Nivoda relies recognize that any pleading defects can be cured by amendment. *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) (granting plaintiff 30 days to replead his copyright claims in a second amended complaint); *Richardson v. Commerce Media Holdings*, 2025 WL 919670, *4 (S.D.N.Y. Mar. 26, 2025) (plaintiff previously given opportunity to amend); *Gayle v. Larko*, 2019 WL 4450551, *4 (S.D.N.Y. Sept. 17, 2019) (plaintiff had already amended and made no further request); *Lennon v. Seaman*, 2002 WL 109525 (S.D.N.Y. Jan. 28, 2002) (leave to amend). It was reversible error for Rapaport to not be given leave to amend.

23

To support its argument that Rapaport cannot establish its infringement claim, Nivoda relies on alleged images from its website and asks the Court to conduct a side-by-side visual comparison of those cherry-picked website images with printed versions of the Price List to conduct a substantial similarity analysis. That is too narrow a view of both Rapaport's infringement claim and of the law.

It is too narrow a view because Nivoda is attempting to conflate itself, an entity with various business operations, with its end-user product experience (i.e., what a website visitor sees). Whether copies of the printed version of the Price List are visually displayed to users of Nivoda's website is not dispositive of infringement.

Behind the scenes, as a matter of mathematical certainty, Nivoda is copying the Price List. Nivoda cannot calculate the percentage differences without copying Rapaport's pricing opinions; those pricing opinions are necessarily part of the calculation. Nivoda asks the Court to perform a visual comparison between the Price List and the appearance of the website, but more telling for purposes of whether Nivoda copies the Price List would be exploring how Nivoda obtains the Price List and what it does with it next in order to calculate and display the percentage difference (e.g., Nivoda's computer code). Rapaport alleges that Nivoda obtains the Price list "by scraping or harvesting the information" from

24

Rapaport or causing authorized subscribers to breach the terms of their subscription. A13.

Internal copying, as distinct from the external visual output that a website user sees, is currently a hot-button issue in recent copyright cases involving artificial intelligence and the fair use doctrine. *E.g.*, *Bartz v. Anthropic PBC*, No. C 24-05417 WHA, 2025 WL 1741691 (N.D. Cal. June 23, 2025); *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2025 WL 1752484 (N.D. Cal. June 25, 2025). But copying for internal purposes has also been addressed in more traditional technologies. *Am. Geophysical Union v. Texaco Inc*., 802 F. Supp. 1, 4 (S.D.N.Y. 1992) (photocopying eight articles from a scientific journal for use by researchers was not fair use).

Additionally, Nivoda takes too narrow a view of the law by focusing only on the "display" appearing on its website. Section 106 of the Copyright Act grants Rapaport a bundle of rights. 17 U.S.C. § 106. Under the statute, Rapaport's right to "display" the Price List is distinct from Rapaport's right to "reproduce" the Price List, which is also distinct from Rapaport's right to "distribute" the Price List, which is also distinct from Rapaport's right to prepare "derivatives" of the Price List. *Id.* Each of those is a distinct right that Rapaport has under section 106 of the Copyright Act. Even if Nivoda is not "displaying" printed versions of the Price List on its website, Nivoda's unauthorized exploitations of the Price List violate

Rapaport's other exclusive rights under section 106 of the Copyright Act, including distribution, reproduction, and derivative works. The price calculator and percentage differences demonstrate that Nivoda is creating and displaying unauthorized derivatives of the Price List, which it does by copying the Price List.

In any event, to the extent that there are any issues with the specifics of Rapaport's allegations in the complaint, then such issues could easily be dealt with by Rapaport in an amended complaint. Rapaport was not given the chance to amend because the district court dismissed the original complaint with prejudice on the basis of the merger doctrine.

## C. Rapaport Has Obtained And Pleaded Copyright Registrations

Nivoda argues that Rapaport has not obtained the required copyright registrations, under 17 U.S.C. § 411, because the complaint does not identify stand-alone copyright registrations for each weekly edition of the Price List. But editions of the Price List appear in Rapaport's magazines that are the subject of the copyright registrations identified in the complaint. A11-12. The copyright registrations for those magazines are sufficient to satisfy section 411 with respect to the editions of the Price List printed in those magazines, pursuant to this Court's decision in *Morris*.[7] In *Morris*, this Court was clear: "Under the law of this

---

[7] *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001), as clarified on denial of reh'g, 283 F.3d 502 (2d Cir. 2002) ("*Morris*"), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

26

Circuit, where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part." 259 F.3d at 68. Nivoda offers no basis to overturn that precedent. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266, 134 S. Ct. 2398, 2407 (2014) ("Before overturning a long-settled precedent, however, we require 'special justification,' not just an argument that the precedent was wrongly decided."); *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 398 (2d Cir. 2022) (judicial precedents are presumptively correct, valuable to the legal community as a whole, and should stand unless a court concludes that the public interest would be served by a vacatur).

In an attempt to get around *Morris*, Nivoda now argues on this appeal that the registration does not protect the numbers in the Price List because they "are uncopyrightable short phrases." Niv. Br., p. 31. Nivoda did not make that argument below, and therefore Nivoda should be precluded from making it on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Windward Bora LLC v. Sotomayor*, 113 F.4th 236, 245 (2d Cir. 2024) (declining to consider arguments not raised below).

27

In any event, the Price List and numerous pricing opinions therein are copyrightable; both the content of the Price List (including the pricing opinion), and the selection, coordination and arrangement of the Price List, are Rapaport's original expression and protected by copyright law. *See*, *CDN* and *CCC*. The pricing opinions are not equivalent to ingredients and cooking directions in a book of recipes. *Coscarelli v. ESquared Hosp. LLC*, No. 18-CV-5943 (JMF), 2021 WL 5507034, at *14-15 (S.D.N.Y. Nov. 24, 2021). They are Rapaport's original expression. *See*, *CDN* and *CCC*.

Lastly, all Rapaport needs is a single copyright registration to satisfy section 411. The complaint identifies eight copyright registrations, and the claims are not precluded even if two of the eight deposit copies for some reason omitted a version of the Price List. Any such "issue" could be cured by amendment or addressed at summary judgment. Likewise, inasmuch as Nivoda continues to infringe the Price List, Rapaport can amend the complaint to add additional issues of the magazine and/or file new stand-alone copyright registration for the Price List and then amend to add such newly-filed stand-alone registrations. *See*, *Dolby Laboratories Licensing Corp. v. Roku, Inc.*, No. 24-CV-04660-EJD, 2025 WL 2021803, at *8-9 (N.D. Cal. July 18, 2025) (agreeing with those courts that have concluded that plaintiffs are not precluded from amending an existing lawsuit to add a newly

28

asserted claim for copyright infringement as long as the copyright issued before the amendment asserting the infringement claim was filed).

### D.     Fair Use Is Not A Viable Defense

When a defendant is asserting fair use as a good faith defense, typically they heavily brief the issue.  But here, Nivoda (both at the district court and now on appeal) dedicates few pages to addressing fair use.  A purported defense receiving such minimal briefing by the defendant should not serve as the basis for affirming the district court on alternative grounds.  *Cf.*, *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

In any event, Nivoda's fair use arguments lack merit.  Fair use is an affirmative defense presenting a mixed question of law and fact that in very limited circumstances is appropriate for determination on a Rule 12 motion (e.g., in those instances where a court need only compare the two works at issue).  This is not such a case.

The four use factors favor Rapaport.  17 U.S.C. § 107.  On the first factor, Nivoda's exploitations of the Price List for commercial purposes is not transformative.  Nivoda is communicating Rapaport's pricing opinion, which is the same thing that the Price List does.  On the second factor, the Price List is not

factual and therefore entitled to stronger protection. On the third factor, Nivoda is copying the entirety of Rapaport's pricing opinions in the Price List. On the fourth factor, Nivoda's wholesale copying of the Price List for commercial purposes usurps demand for Rapaport's protectible market for the Price List. Rapaport's subscribers are disincentivized from paying for the Price List if they can sign-up with Nivoda for free and then use Nivoda's price calculator to get Rapaport's pricing opinion.

## IV. <u>CONCLUSION</u>

This Court should vacate and reverse the Judgment, Opinion and Order; remand the case to the district court for further proceedings; and tax costs against Nivoda (Fed. R. App. P. 39(a)).

Dated:     August 4, 2025
           New York, NY

                       FIRESTONE GREENBERGER PLLC
                       *Attorneys for Appellant-Plaintiff*
                       *Rapaport USA, Inc.*

                       <u>/s/ Jordan Greenberger</u>
                       Jordan Greenberger
                       104 West 40th Street, 4th Floor
                       New York, NY 10018
                       (212) 597-2255
                       jg@firegreenlaw.com

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,902 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.


Dated:      August 4, 2025
           New York, NY

Respectfully submitted,

FIRESTONE GREENBERGER PLLC
*Attorneys for Appellant-Plaintiff*
*Rapaport USA, Inc.*

/s/ Jordan Greenberger
Jordan Greenberger
104 West 40th Street, 4th Floor
New York, NY 10018
(212) 597-2255
jg@firegreenlaw.com